**Julie CHAPMAN, Plaintiff–Appellee,**

v.

**Doug NICHOLS, Defendant–Appellant,**

and

**Board of County Commissioners of Creek County, Oklahoma, Defendant.**

**Winey BEAVER, Stephanie Taylor, Jennafer Leone, Plaintiffs–Appellees,**

v.

**Doug NICHOLS, Board of County Commissioners of Creek County, Oklahoma, Defendants–Appellants.**

**Nos. 92–5122, 92–5178.**

United States Court of Appeals, Tenth Circuit.

March 23, 1993.

---

John L. Harlan of John L. Harlan & Associates, P.C., Sapulpa, OK, for defendant-appellant.

Ron Collier and Teresa A. Simmons, Collier Law Office, Inc., Oklahoma City, OK, for plaintiff-appellees.

Before SEYMOUR, ANDERSON, and EBEL, Circuit Judges.

SEYMOUR, Circuit Judge.

Plaintiffs are four women who were arrested for minor traffic violations, taken to the Creek County Jail in Sapulpa, Oklahoma, and subjected to strip searches notwithstanding the lack of reasonable suspicion to believe they were concealing weapons or contraband. They brought this suit under 42 U.S.C. § 1983 (1988) against Doug Nichols, individually and in his official capacity as Sheriff of Creek County, contending that he violated their Fourth Amendment rights by promulgating the policy under which they were searched. Sheriff Nichols appeals the district court's refusal to grant summary judgment in his favor based on qualified immunity. We affirm.[1]

I.

Plaintiffs were each stopped at separate times by the Oklahoma Highway Patrol for speeding, and were then arrested for driving with suspended drivers licenses. They were taken to the Creek County Jail and held pending release on bail. Upon arrival at the jail, each was subjected to a strip search by a female jail employee in a small private laundry room. According to their deposition testimony, one plaintiff was asked to stand with her hands over her head, see Aplt.App. at 60–64, one was subjected to a visual inspection of her pubic area, see id. at 69–74, one was required to bend over and grab her ankles, see id. at 79–91, and one, who was searched while the door to the laundry room was ajar, had to bend over and pull her panties down to her ankles, see id. at 104–115. It is undisputed that jail officials conducted these searches solely pursuant to an across-the-board strip search policy applied to all jail detainees, and that the officials had no reasonable suspicion that these particular detainees were carrying or concealing weapons or contraband.

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

Both sides moved for summary judgment. The district court concluded that the law was clearly established at the time of the searches at issue, and that under that law the searches were unconstitutional. The court held accordingly that defendant's qualified immunity defense was not sustainable on summary judgment and denied his motion. The court ruled, however, that "whether an 'objectively reasonable' officer could have believed that conducting the search in private comported with the Fourth Amendment is a question which may have to be submitted to the jury." Aplt.App. at 16. The district court therefore denied plaintiffs' motion for summary judgment against defendant Nichols, individually, as to liability.[2]

Sheriff Nichols appeals the denial of qualified immunity, asserting that the policy at issue is not unconstitutional and that he is entitled to qualified immunity in any event because the law was not clearly established.[3] Plaintiffs respond that the policy is unconstitutional, that the law was clearly established, and that the district court therefore erred in holding that fact questions remain on defendant's qualified immunity claim. They further contend that defendant's appeal is frivolous.

## II.

We begin our discussion with the Supreme Court case of *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), in which the Court articulated the balancing test applicable to alleged unconstitutional searches.

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires *a balancing of the need for the particular search against the invasion of personal rights that the search entails.* Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Id.* at 559, 99 S.Ct. at 1884 (emphasis added).

■ In this case, it is undisputed that plaintiffs were arrested for minor traffic violations and were awaiting bail, that jail officials had no reasonable suspicion that these particular arrestees were likely to be carrying or concealing weapons or drugs, and that plaintiffs were searched solely because the blanket policy required all detainees to be subjected to a strip search. Every circuit court, including our own, which has considered the above circumstances under the *Wolfish* balancing test has concluded that a search under these circumstances is unconstitutional. *See e.g., Masters v. Crouch,* 872 F.2d 1248, 1253 (6th Cir.), *cert. denied,* 493 U.S. 977, 110 S.Ct. 503, 107 L.Ed.2d 506 (1989); *Watt v. City of Richardson Police Dep't,* 849 F.2d 195, 199 (5th Cir.1988); *Walsh v. Franco,* 849 F.2d 66, 68 (2d Cir.1988); *Weber v. Dell,* 804 F.2d 796, 801 (2d Cir.1986), *cert. denied,* 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987); *Ward v. County of San Diego,* 791 F.2d 1329, 1332 (9th Cir. 1986), *cert. denied,* 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987); *Jones v. Edwards,* 770 F.2d 739, 742 (8th Cir.1985); *Stewart v. Lubbock County,* 767 F.2d 153, 156–57 (5th Cir.1985), *cert. denied,* 475 U.S. 1066, 106 S.Ct. 1378, 89 L.Ed.2d 604 (1986); *Giles v. Ackerman,* 746 F.2d 614, 617 (9th Cir.1984), *cert. denied,* 471 U.S. 1053, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985); *Hill v. Bogans,* 735 F.2d 391, 394 (10th Cir.1984); *Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1273 (7th Cir.1983); *Logan v. Shealy,* 660 F.2d 1007, 1013 (4th Cir.1981), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982).

There can be no doubt that a strip search is an invasion of personal rights of the first magnitude.

> It is axiomatic that a strip search represents a serious intrusion upon personal rights. In [*Mary Beth G. v. City of Chicago,* 723 F.2d 1263 (7th Cir.1983)],

---

2. The court granted plaintiffs' motion for summary judgment as to liability against Sheriff Nichols in his official capacity.

3. The record reveals that Sheriff Nichols has discontinued the policy challenged here.

the court referred to strip searches as "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission." *Mary Beth G.,* 723 F.2d at 1272. Another court described the indignity individuals arrested for minor offenses experience in the following manner:

> The experience of disrobing and exposing one's self for visual inspection by a stranger clothed with the uniform and authority of the state, in an enclosed room inside a jail, can only be seen as thoroughly degrading and frightening. Moreover, the imposition of such a search upon an individual detained for a lesser offense is quite likely to take that person by surprise, thereby exacerbating the terrifying quality of the event.

*John Does 1–100 v. Boyd,* 613 F.Supp. 1514, 1522 (D.C.Minn.1985). *Justice v. City of Peachtree City,* 961 F.2d 188, 192 (11th Cir.1992); *see also Boren v. Deland,* 958 F.2d 987, 988 n. 1 (10th Cir. 1992) ("[A] strip search, regardless how professionally and courteously conducted, is an embarrassing and humiliating experience." (quoting *Hunter v. Auger,* 672 F.2d 668, 674 (8th Cir.1982)); *Thompson v. City of Los Angeles,* 885 F.2d 1439, 1446 (9th Cir.1989) ("The feelings of humiliation and degradation associated with forcibly exposing one's nude body to strangers for visual inspection is beyond dispute"); *Jones,* 770 F.2d at 742 (strip search "intrusive, depersonalizing, and distasteful").

■ Defendant contends that the invasion posed by his policy is justified by the need for jail security because women detainees must be incarcerated in one cell with the general jail population. However, there is no showing here of a security need that would justify this strip search policy in view of the extent of the invasion of privacy entailed by such a search. "While the need to assure jail security is a legitimate and substantial concern, we believe that, on the facts here, the strip searches bore an insubstantial relationship to security needs so that, when balanced against plaintiffs-appellees' privacy interests, the searches

cannot be considered 'reasonable.'" *Mary Beth G.,* 723 F.2d at 1273; *see also Giles,* 746 F.2d at 617 (jail security needs do not justify strip search absent reasonable suspicion that individual detainee carrying weapons or contraband); *Logan,* 660 F.2d at 1013. ("An indiscriminate strip search policy routinely applied to detainees such as Logan along with all other detainees cannot be constitutionally justified simply on the basis of administrative ease in attending to security considerations.").

We addressed these same security concerns in *Hill.* Hill had been stopped for driving with an expired automobile inspection sticker. He was detained after the officer did a routine warrant check and was informed of an outstanding bench warrant for Hill's arrest for failure to appear on charges of speeding and violating a license restriction. When he arrived at jail, he was given a pat-down search and was transferred to the holding area, where he made several phone calls to arrange for bail. In accordance with jail procedures applied to all detainees, Hill was then visually strip searched in a lobby area in front of ten or twelve people.

Although Hill was "briefly intermingled with the prison population," 735 F.2d at 394, we determined that the jail's resulting need for security did not justify the strip search.

> No other conceivable justification exists for the strip search in this case. There were no circumstances here indicating that Hill might possess either a weapon or drugs.... [The offenses for which Hill was arrested] are not offenses associated with the concealment of weapons or contraband in a body cavity. In fact, a peculiar aspect of the strip search in this case is that the officer did not carefully examine Hill's body cavities, but instead merely looked in his trousers and at his buttocks. *Almost anything that the examining officer could have found through this procedure would already have been discovered during the pat down search that had been conducted on Hill's arrival at the jail.*

*Id.* (emphasis added). Other courts have also recognized that jails can meet the minimal security concerns they may have with minor offenders by means of a "less intrusive pat-down search." *Jones,* 770 F.2d at 742; *see also Logan,* 660 F.2d at 1013 (Logan was strip searched after "she had been at the Detention Center for one and one-half hours without even a pat-down search."). We conclude that the policy here does not pass constitutional muster.

### III.

Sheriff Nichols contends that he is nonetheless entitled to qualified immunity because the above cases are distinguishable and no case has held unconstitutional a search conducted under the circumstances of this case. In so doing, Sheriff Nichols disregards both authority holding virtually identical searches violative of the Fourth Amendment, and cases denying a claim of qualified immunity under indistinguishable facts.

■ The principles governing the availability of qualified immunity are clear. An official is protected from personal liability if his allegedly unlawful official action was objectively reasonable when assessed in light of legal rules that were clearly established when the action was taken. *See Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987).

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id.* at 640, 107 S.Ct. at 3039 (citation omitted).

> Government officials are deemed to have "presumptive knowledge of and respect for 'basic, unquestioned constitutional rights,'" and may be held liable for a violation of constitutional rights when they "'knew or reasonably should have known'" of the constitutionally violative effect of their actions. Thus, absent extraordinary circumstances, '[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.'

*Walsh,* 849 F.2d at 68 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 818–19, 102 S.Ct. 2727, 2738, 2738–39, 73 L.Ed.2d 396 (1982)). Accordingly, courts have placed the responsibility for keeping abreast of constitutional developments in criminal law squarely on the shoulders of law enforcement officials. Given the power of such officials over our liberty, and sometimes even over our lives, this placement of responsibility is entirely proper. Law enforcement officials must be cognizant not only of how far their authority extends, but also of the point at which their authority ends. At the same time, however, [courts do not] require of most government officials the kind of legal scholarship normally associated with law professors and academicians. A reasonable person standard adheres at all times.

*Ward,* 791 F.2d at 1332.

■ Sheriff Nichols asserts that notwithstanding the unanimous circuit authority condemning blanket strip search policies applied to minor offense detainees, the unlawfulness of the policy at issue here was not apparent because the searches were conducted in private and did not include visual body cavity inspections. We disagree. Prior cases involving each of these circumstances have held such searches unconstitutional.

The searches in this case took place on February 4, 1992, March 10, 1992, August 24, 1991, and September 12, 1991. At least five circuit cases decided prior to the conduct challenged here have condemned indiscriminate strip search policies that involved a private search. *See e.g., Watt,* 849 F.2d at 196 (search performed in windowless holding cell with only female officer and trainee present); *Weber,* 804 F.2d at 799 (search performed in vacant cell); *Jones,* 770 F.2d at 742 ("location of search did not

expose Jones to the scrutiny of other jailers or passersby"); *Giles,* 746 F.2d at 616 (search took place in booking cell); *Mary Beth G.,* 723 F.2d at 1267 n. 4 (policy requiring that search be "conducted in closed room away from the view of all persons except the person conducting the search" nonetheless unconstitutional). Although the search that this court held unconstitutional in *Hill,* 735 F.2d 391, involved a strip search conducted in a public area, that holding does not provide an objectively valid reason for concluding that indiscriminate strip searches conducted in private are therefore lawful, particularly in view of the contrary authority set out above.

We likewise cannot agree that it was objectively reasonable in light of the state of the law to believe that the strip search of a minor traffic offender without reasonable suspicion was constitutional simply because the search did not include a visual body cavity inspection. In *Giles,* 746 F.2d 614, as here, the detainee was not subjected to a visual body cavity examination. The parties there agreed that although the search was conducted courteously and in an appropriate place, "Giles' privacy was invaded in a frightening and humiliating manner." *Id.* at 617. The court specifically distinguished between that search and a visual body cavity examination and nonetheless held the search unconstitutional, stating that reasonable individualized suspicion was required before such a search could be lawfully conducted. *Id.* at 616 & n. 1. Moreover, the actual search in *Hill* does not appear to have been more extensive than the searches here. Indeed, no circuit court has upheld qualified immunity on the basis of the distinction defendant would have us draw. We are persuaded that no objectively reasonable person would believe that a strip search of a minor offense detainee would be constitutional simply because the search did not involve a more obtrusive viewing of the detainee's naked body.

In light of the cases set out above and recent Supreme Court authority, the district court erred in holding that defendant's objective reasonableness posed a jury question. The Supreme Court has specifically rejected a line of cases under which it was left to the jury to decide whether an officer could have reasonably believed he was acting properly in light of established law. *See Hunter v. Bryant,* —— U.S. ——, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam). The Court stated that "[i]mmunity ordinarily should be decided by the court long before trial." *Id.* at ——, 112 S.Ct. at 537; *see also Act Up!/Portland v. Bagley,* 971 F.2d 298, 301 (9th Cir.1992) (interpreting *Bryant* to require that when facts underlying qualified immunity not in dispute, district court should decide objective reasonableness on summary judgment).

The facts are not in dispute here. The legal issue is whether, as Sheriff Nichols contends, an official could have reasonably believed that a strip search policy applied to minor offense detainees without particularized reasonable suspicion was lawful if conducted in private. In light of the five cases set out above that expressly hold such a private strip search unconstitutional and the lack of any authority to the contrary, we conclude as a matter of law that such a belief is not objectively reasonable. Two of the five cases held, as we do here, that the qualified immunity defense must fail in light of clearly established law. *See Weber,* 804 F.2d at 803–04; *Jones,* 770 F.2d at 742 n. 4.

Finally, we observe that no circuit case has upheld the grant of qualified immunity when asserted against a claim based on an across-the-board policy of strip searching minor offense detainees. *See, e.g., Masters,* 872 F.2d at 1253–55; *Walsh,* 849 F.2d at 68–69; *Weber,* 804 F.2d at 803–04; *Ward,* 791 F.2d at 1332–33; *Jones,* 770 F.2d at 742 n. 4. Although not all of the cases deal with private searches and/or searches not including visual body cavity inspection, the rationale underlying each of them unmistakably indicates that the search policy in the present case was not objectively reasonable in light of clearly established law. As one of the cases pertinently observed:

> a probable explanation for the absence of such cases is that other government au-

thorities have sensibly abandoned or declined to establish policies calling for routine strip/body cavity searches of all persons resisting arrest. As we have noted, municipalities that have adopted similar policies, uniformly subjecting intoxicated traffic law offenders and other misdemeanants to such searches, have all seen those policies abrogated when challenged.

*Weber,* 804 F.2d at 804.

Accordingly, we AFFIRM the district court's ruling that the strip search policy under which plaintiffs were searched is unconstitutional. We also affirm the district court's determination that the law was clearly established. We hold as a matter of law that Sheriff Nichols' belief that his policy was constitutional was not objectively reasonable under clearly established law. The case is REMANDED for further proceedings consistent with this opinion.[4]

**4.** We deny plaintiffs' motion for sanctions because we do not agree that this appeal was frivolous.