Lisa Ann COTTRELL, Plaintiff–
Appellant,

v.

KAYSVILLE CITY, UTAH, a political subdivision and municipal corporation of the State of Utah; Robert L. Nace, individually and as an employee of said municipality; Davis County, Utah, a political subdivision of the State of Utah; Mary Haddock Robb, and Lorine Ann Kemner, individually and as employees of Davis County, Utah, Defendants–Appellees.

No. 92–4174.

United States Court of Appeals,
Tenth Circuit.

May 18, 1993.

George K. Fadel, Bountiful, UT, for plaintiff-appellant.

Dale J. Lambert and Karra J. Porter, of Christensen, Jensen & Powell, Salt Lake City, UT, for defendants-appellees Kaysville City and Robert L. Nace.

Gerald E. Hess, Deputy Davis County Atty., Farmington, UT, for defendants-appellees Davis County and Mary Haddock Robb.

Before MOORE and BRORBY, Circuit Judges, and VAN BEBBER,[*] District Judge.

PER CURIAM.

Plaintiff Lisa Ann Cottrell brought this action pursuant to 42 U.S.C. § 1983 to recover damages for alleged constitutional violations which took place when she was arrested on driving under the influence charges and subsequently strip searched. The district court entered summary judgment on all claims in favor of defendants Kaysville City, Utah, Robert L. Nace, Davis County, Utah, Mary Haddock Robb, and Lorine Ann Kemner. *Cottrell v. Kaysville City*, 801 F.Supp. 572, 576 (D.Utah 1992). We reverse the district court and remand this matter for further proceedings.[1]

*Background*

On July 27, 1990, the Davis County dispatcher received a telephone complaint concerning a Chevrolet Blazer driving on Green Road in Fruit Heights, Utah. The complainant relayed concern that the driver was operating under the influence. The dispatcher communicated this information to Kaysville City police officers via radio. Officer David Quinley responded to the call and located the Blazer driving very slowly on Green Road. He followed the vehicle into a church parking

---

[*] Honorable G. Thomas Van Bebber, District Judge, United States District Court for the District of Kansas, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

lot, and parked right behind it. The time was approximately 10:30 p.m.

Officer Quinley approached the car. The driver was plaintiff Cottrell. The officer told Ms. Cottrell he suspected she was driving under the influence. She told him she had not had anything to drink. He also inquired whether she had taken any drugs. She told him she had a prescription for phenobarbital, but had not taken any that day. The police report which Officer Quinley submitted at the time states he thought her speech was "a little slurred." No other observations of her physical appearance are noted in the report. In the affidavit submitted in this litigation, however, Officer Quinley stated Ms. Cottrell's "eyes were very dilated", and "her speech pattern was erratic." Appellant's App. at 57.

Based on his observations, Quinley radioed in his assessment that she was driving under the influence. Shortly thereafter, he asked Ms. Cottrell to perform certain field sobriety tests. There is some dispute about Ms. Cottrell's ability to perform these tests. Officer Quinley stated in his affidavit that she was unable to accomplish the "walk and turn" test because she took more than the instructed number of steps and held her arms up when she walked heel to toe. He also concluded she failed the "one leg stand" because on her first try she touched her foot on the ground before counting to thirty.

Ms. Cottrell, on the other hand, stated in her affidavit that she performed the "walk and turn" test without any problem, and also was able to count to thirty while holding her leg up. She admitted she could not follow a pen light when requested to do so, but stated she has never been able to follow lights. The parties agree that she was able to reach out and touch a pen held in front of her. Ms. Cottrell also stated that throughout the time the testing took place, one of the officers was shining a large flashlight in her face, which made it difficult to see.

Defendant Kaysville City police officer Robert Nace arrived on the scene while Officer Quinley was administering the field sobriety tests. Officer Nace also asked Ms. Cott-rell if she had been drinking or using drugs. Again, she stated she had not, and referred Officer Nace to her driver's license, which had a medical notation on it. Officer Nace asked Ms. Cottrell to look him straight in the eye, but she declined, stating she belonged to a group which taught it was disrespectful to do so. At his request, Ms. Cottrell breathed into Officer Nace's face. He did not detect any alcohol.

Ms. Cottrell was handcuffed and placed in the police squad car. Her vehicle was inventoried, but no weapons or contraband were found. At the Davis County jail, Ms. Cottrell allowed officers to take a blood sample to verify her innocence. She was booked, and female officers performed a thorough pat down search. All her jewelry, her belt, and her shoes were taken from her. At the time of her arrest, she was wearing light summer clothes. She made a request of Officer Nace to call her parents, but that request was denied.

According to Ms. Cottrell's complaint, Officer Nace then ordered a strip search. The female deputies on duty that night were defendants Mary Haddock Robb and Lorine Ann Kemner.[2] According to the complaint, one of these defendants told Officer Nace the search was unnecessary, but he ordered them to do it anyway. Lisa Cottrell was taken to a separate room. She was required to take off all her clothes and bend over while the deputies inspected her. Officer Nace denies that he ordered the search, and disputes that the incident ever took place.

Ms. Cottrell ultimately called a friend who contacted her parents. They posted a $600.00 bond and she was released. The blood sample analysis ultimately revealed no alcohol or drugs, except for a trace of phenobarbital, which was within prescription limits. Notwithstanding this blood analysis, Officer Nace filed a report with the State Department of Public Safety seeking revocation of Ms. Cottrell's driver's license for driving under the influence. Following a hearing, that department determined it would not suspend or revoke her license.

2. The district court entered summary judgment in favor of all the defendants, including Lorine Kemner. On appeal, however, the briefs do not reference her as an appellee.

In addition, on October 1, 1990, a criminal information was filed in Davis County circuit court charging Lisa Cottrell with driving under the influence of alcohol and/or drugs. After Ms. Cottrell supplied the county attorney with the results of the blood sample analysis, an amended information was filed charging her with failure to wear and secure a safety belt system. On March 18, 1991, Ms. Cottrell gave the defendants statutory notice of her injuries pursuant to Utah Code Ann. § 63–30–11. This lawsuit followed.

### Discussion

■ The district court analyzed Ms. Cottrell's claims under Fed.R.Civ.P. 56(c), concluding the defendants were entitled to judgment as a matter of law. We review this determination de novo. *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230 (10th Cir. 1990). Thus, we may affirm only if we determine this case involves no genuine disputes over material facts. *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir.1991). In this regard, our review of the record is in a light most favorable to Ms. Cottrell. *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir.1992). It is with these standards in mind that we review the district court's decision.

■ The district court approached its analysis of all of Ms. Cottrell's claims from the singular question "whether or not the strip search of the plaintiff violated her Constitutional rights." 801 F.Supp. at 574. Ultimately, the court determined that because defendants' actions were reasonable as a matter of law, none of the claims, regardless of the legal theory on which they were based, could withstand the summary judgment challenge.

We disagree with the district court's approach on two levels. First, our review of the record reveals this case is rife with factual disputes which are both genuine and material. Second, we reject the district court's legal approach to the issues presented. Ms.

Cottrell has stated several different claims under § 1983. It was error to consider them as one claim going only to the allegedly illegal search.

The amended complaint states numerous claims for relief. Under one section of the complaint identified specifically as a § 1983 claim, Ms. Cottrell states individual claims for wrongful arrest, wrongful search and seizure, and deliberate indifference to her constitutional rights by virtue of the city's failure to train and supervise Officer Nace. She alleges that as a result of the defendants' individual and collective actions, she suffered deprivation of her due process, Fourth Amendment, and equal protection rights. She also states separate claims for false imprisonment, assault and battery, malicious prosecution, abuse of process, intentional infliction of emotional distress, defamation, and invasion of privacy.

The district court's approach made it unnecessary to address Ms. Cottrell's claims on an independent basis. Implicit in the court's conclusions regarding the reasonableness of defendants' actions, however, is a rejection of two of the claims stated in the complaint.[3] Specifically, the district court rejected Ms. Cottrell's wrongful arrest and illegal search claims. Because the requirements for the claims are different, we address them separately here. We hold that both present factual issues which make summary judgment inappropriate.

### Wrongful Arrest

■ A plaintiff may recover damages under § 1983 for wrongful arrest if she shows she was arrested without probable cause. *See Lessman v. McCormick*, 591 F.2d 605, 609–11 (10th Cir.1979); *see also Franklin v. Thompson*, 981 F.2d 1168, 1170 n. 3 (10th Cir.1992) ("A claim of false arrest is premised on a lack of probable cause, a constitutional right under the Fourth Amendment."). Probable cause, in turn, is present if "at the moment the arrest was made ... the facts and circumstances within [the arresting offi-

---

**3.** The district court also determined the stop of Ms. Cottrell's vehicle was reasonable because the officers had, as a matter of law, a reasonable suspicion that a crime was being committed. *See United States v. Corral*, 899 F.2d 991, 993–94 (10th Cir.1990). We have reviewed the amended complaint carefully. It does not appear Ms. Cottrell ever raised a claim related to the investigatory stop.

cers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Adams v. Williams,* 407 U.S. 143, 148, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972) (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)).

■ Here, the district court determined there was probable cause to arrest based on Officer Quinley's observation of Ms. Cottrell's vehicle, her admitted failure on one field sobriety test, and her refusal to look Officer Nace in the eye. In addition, the court noted the officers' assessment that Ms. Cottrell's eyes were glassy and her speech was slurred. If these facts were undisputed, we would have no problem agreeing with the district court's conclusions. The record reveals, however, that Ms. Cottrell disputed each of these findings.

In her verified affidavit, Ms. Cottrell denied driving erratically and stated she did not "stop and start" as Officer Quinley had described. She also stated she passed two of the sobriety tests without problems after they were properly explained to her. She added that she had problems with the tests because one of the officers was shining a large flashlight in her eyes. Ms. Cottrell also stated she explained to Officer Nace that she thought it was disrespectful to look someone straight in the eye. She has consistently denied being or acting intoxicated.

These statements undermine and attempt to discredit the statements which the officers have made. The record is replete with factual disputes requiring credibility determinations. We cannot conclude, therefore, that Officer Nace had probable cause, as a matter of law, to arrest Lisa Ann Cottrell. Consequently, it was error for the district court to grant summary judgment on this claim.

*Illegal Search*

"There can be no doubt that a strip search is an invasion of personal rights of the first magnitude." *Chapman v. Nichols,* 989 F.2d 393, 395 (10th Cir.1993). Thus, the Supreme Court has recognized there may be instances where these searches violate Fourth Amend-

ment rights. *See Bell v. Wolfish,* 441 U.S. 520, 558–59, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979); *see also Hill v. Bogans,* 735 F.2d 391, 394 (10th Cir.1984) (strip search held unconstitutional where plaintiff arrested on traffic charge and there was no reasonable suspicion of drugs or weapons). Ms. Cottrell argues the district court erred in determining, as a matter of law, that the strip search here was constitutional.

Although Officer Nace disputes he ordered a strip search, and denies that one took place, the district court assumed the search was conducted when evaluating Ms. Cottrell's claims on summary judgment. Using this assumption, the court held it was reasonable for Officer Nace to order the search. Specifically, the court determined it was reasonable for the officers to assume Ms. Cottrell had drugs concealed on her body because none were found on her person, or in her car. Moreover, the court held the search was justified because "the plaintiff was booked into the county jail with the rest of the jail population." 801 F.Supp. at 576. Finally, the court intimated that the search was reasonable because it is the policy of the Davis County jail to strip search every inmate booked on a drug related charge. These conclusions are unsupportable, both on this factual record and pursuant to the applicable law.

■ This court has spoken often on the constitutional implications of conducting a strip search. *Chapman,* 989 F.2d at 395–96; *Boren v. Deland,* 958 F.2d 987, 988 n. 1 (10th Cir.1992); *Hill,* 735 F.2d at 393–94. In each case, the court must balance the need for the search against the grave invasion of privacy it entails. *Chapman,* 989 F.2d at 395–96 (citing *Wolfish,* 441 U.S. at 559, 99 S.Ct. at 1884). Factors to consider include the scope of the intrusion, the manner in which it was conducted, the justification for initiating the search, and, finally, the place where the search took place. *Wolfish,* 441 U.S. at 559, 99 S.Ct. at 1884.

■ We fail to see how this particular search, if it happened, could be considered reasonable as a matter of law. In his deposition, Officer Nace stated he did not suspect

Ms. Cottrell of having drugs on her person. Appellant's App. at 130. Moreover, he testified that he did not personally do a "pat down search" because he saw no indication she was carrying any weapons, and he did not believe she was a danger to him. *Id.* at 119. These admissions raise serious questions about the justification for conducting the strip search. *See Justice v. City of Peachtree City,* 961 F.2d 188, 193 (11th Cir. 1992) (overriding concerns in conducting strip search are security and concealed contraband).

In addition, contrary to the district court's conclusions, there is nothing in the record to indicate Ms. Cottrell was ever placed in the general jail population. Courts have consistently recognized a distinction between detainees awaiting bail and those entering the jail population when evaluating the necessity of a strip search under constitutional standards. *See Fuller v. M.G. Jewelry,* 950 F.2d 1437, 1448 (9th Cir.1991); *Logan v. Shealy,* 660 F.2d 1007, 1013 (4th Cir.1981). We agree that the security concerns inherent in a bail situation are very different from those present when the detainee will enter the jail for a greater length of time. Here, however, the record is devoid of any evidence indicating Ms. Cottrell was held with any other prisoners.

Finally, it is unclear in this situation what the purpose of the strip search was. Ms. Cottrell was wearing light summer clothes. She had already been through a thorough pat down search. She had not been out of the sight of the officers for some period of time. We agree with the statement made in *Hill* that "[a]lmost anything that the examining officer could have found through this procedure would have already been discovered during the pat down search." 735 F.2d at 394; *see also Draper v. Walsh,* 790 F.Supp. 1553, 1559 (W.D.Okla.1991) (strip search questioned where detainee was held for less than eight hours on public intoxication charge and there was no reasonable suspicion of contraband or weapons).

At a bare minimum, the factual disputes which have arisen concerning the strip search must bar summary judgment. The district court's decision to assume the search took place was error. On remand, the parties should be allowed to develop further the issue whether the search took place, and the circumstances under which it occurred.[4]

The decision of the United States District Court for the District of Utah is REVERSED and REMANDED for further proceedings consistent with this opinion.

---

4. Defendants urge in the alternative that they are qualifiedly immune from suit. Because we are remanding this matter for further proceedings,

we consider the district court the appropriate forum to address that issue in the first instance. *See generally Chapman,* 989 F.2d at 395–99.