Jodie SMOOK, Individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

MINNEHAHA COUNTY, SOUTH DAKOTA; Jim Banbury, in his individual capacity; Todd Cheever, as Director of Minnehaha County Juvenile Detention Center; and John and Jane Doe Detention Center Officers, Defendants.

No. CIV. 00–4202.

United States District Court,
D. South Dakota,
Southern Division.

Jan. 20, 2005.

James G. Abourezk, Abourezk Law Offices, Sioux Falls, SD, Juliet Berger–White, Mary M. Rowland, Matthew J. Piers, Gessler, Hughes, Socol, Piers, Resnick & DYM, Ltd., Chicago, IL, for Plaintiff.

Gary P. Thimsen, Mary A. Akkerman, Susan M. Sabers, Woods, Fuller, Shultz & Smith, Sioux Falls, SD, for Defendant.

## MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

Defendants filed a Motion to Reconsider, Doc. 129, asking that the Court reconsider its ruling on the summary judgment motions in this case in light of the Second Circuit Court of Appeals' decision in *N.G. v. Connecticut*, 382 F.3d 225 (2d Cir.2004), issued on September 7, 2004. (Memorandum Opinion and Order, Doc. 116, September 27, 2004.) The motion has been fully briefed and having carefully considered the parties' arguments and the entire record in this case, the Court has considered the Motion to Reconsider and it is granted to the extent that liability on Plaintiffs' Fourth Amendment claim and the qualified immunity issue are reconsidered on the merits. After such reconsideration, the Court again finds that Defendants are liable on Plaintiffs' Fourth Amendment claim and that Defendants Jim Banbury and Todd Cheever are not entitled to qualified immunity on Plaintiffs' Fourth Amendment claim.

## BACKGROUND

On September 27, 2004, the Court held that the Juvenile Detention Center's ("JDC") blanket policy of strip searching minors arrested for minor or non-felony offenses, without any individualized determination of reasonable suspicion that the individual was or is likely to be carrying or concealing weapons, drugs or other contraband, violates the Fourth Amendment. *See Smook v. Minnehaha County*, 340 F.Supp.2d 1037, 1050 (D.S.D.2004). The Court applied the balancing test in *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), to determine whether the JDC's strip search policy in existence at the relevant time period violated the Fourth Amendment:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*See Smook*, 340 F.Supp.2d at 1042–43 (quoting *Bell*, 441 U.S. at 559, 99 S.Ct. 1861). The Second Circuit applied the "overarching principle" set forth in *Bell* in conducting "'a fact-specific balancing of the intrusion ... against the promotion of legitimate governmental interests.'" *N.G.*

*v. Connecticut*, 382 F.3d at 230–31 (quoting *Board of Education v. Earls*, 536 U.S. 822, 829, 122 S.Ct. 2559, 153 L.Ed.2d 735 (2002)). The Second Circuit held that "[a]ssessing all of the circumstances—the risks to the psychological health of the children from performing the searches and the risks to their well-being and to institutional safety from not performing the searches, we conclude that the strip searches upon initial admission do not violate Fourth Amendment standards." *N.G. v. Connecticut*, 382 F.3d at 237. The Second Circuit did not evaluate the facial validity of the strip search policy, but held that two of the strip searches involved in that case did not violate the Fourth Amendment. *See id.* at 230 n. 6. In the present case, the Court evaluated both the facial validity of the JDC's strip search policy and the strip search of Plaintiff Smook. Under the facts of the present case, the Court reached the opposite conclusion from the Second Circuit in conducting the fact-specific balancing of the intrusion of the privacy of Plaintiff Smook and other juveniles admitted to the JDC against the promotion of JDC's legitimate governmental interests. *See Smook*, 340 F.Supp.2d at 1050.

## DISCUSSION

■ Defendants brought their motion for reconsideration under Rule 54(b) of the Federal Rules of Civil Procedure. The Court recognizes that it may reconsider its rulings on the summary judgment motions because judgment adjudicating all the claims and the rights and liabilities of all the parties has not been entered in this case. Fed.R.Civ.P. 54(b).

*A. Liability on Fourth Amendment Claim*

■ The initial issue to be addressed is Defendants' failure to recognize the Court's factual findings regarding the breadth of the JDC's strip search policy in existence at the relevant time period. While Defendants continue to repeatedly assert in their brief that the strip search policy in effect at the time of Plaintiff's search did not require juveniles to remove their undergarments, Defendants disregard the evidence on record and the Court's finding that the written policy in effect at that time did require juveniles to remove their undergarments while being strip searched. *See Smook*, 340 F.Supp.2d at 1040. Thus, Defendants' contention that the strip search policy in this case was less intrusive than the strip searches held constitutional by the Second Circuit is erroneous. To argue that the Court was wrong in its fact finding is one way to approach that issue. To fail to even acknowledge the facts as found by the Court results in a brief that is of no assistance to the Court.

The Court acknowledges the Second Circuit's statement that "[s]trip searches of children pose the reasonableness inquiry in a context where both the interests supporting and opposing such searches appear to be greater than with searches of adults confined for minor offenses." *N.G. v. Connecticut*, 382 F.3d at 232. The Second Circuit's decision, however, does not convince the Court that the JDC's strip search policy results in reasonable searches under Fourth Amendment standards. The dissent in *N.G. v. Connecticut*, 382 F.3d at 238–45, articulates much of this Court's disagreement with the Second Circuit's decision. Specifically, the Court agrees with the dissent in *N.G. v. Connecticut*, that the majority opinion "overstates the relevance" of several non-prison cases upholding drug testing of students or employees who have voluntarily engaged in the job or activity that required testing and "downplays the significance of the most closely analogous case it cites, *Justice v. City of Peachtree City*, 961 F.2d 188, 193 (11th Cir.1992)." *N.G. v. Con-*

*necticut,* 382 F.3d at 241 (dissenting opinion). This Court does respectfully submit that the majority opinion in *N.G. v. Connecticut,* fails to adequately credit the fact that juveniles are not young adults. Harsh and potentially scaring treatment of juveniles suspected of minor offenses, such as driving while revoked, cannot be justified by an *in loco parentis* rationale when the primary approach of the government personnel is one of juvenile law enforcement. Those government officials should be more attuned to the different susceptibilities of juveniles as opposed to treating juveniles as people with fewer rights as to their person when compared with adults. Additionally, similar to the dissent in *N.G. v. Connecticut,* 382 F.3d at 241, the Eighth Circuit recently recognized the distinction between being subjected to a search at the hands of State officials in a situation where one voluntarily participates in an activity that requires random searches compared to being searched without having voluntarily participated in the activity allowing for random searches. *See Doe v. Little Rock Sch. Dist.,* 380 F.3d 349, 353–54 (8th Cir.2004).

The Eleventh Circuit's opinion in *Justice, supra,* was relied upon by the Court in weighing the various interests in this case to determine whether the JDC's policy violated the Fourth Amendment. *See Smook,* 340 F.Supp.2d at 1047–48. The Second Circuit's opinion does not alter the Court's view of the soundness of the principles recognized by the Eleventh Circuit in *Justice,* 961 F.2d at 193, or that decision's relevance to the question of whether the JDC's strip search policy in this case is unconstitutional. As recognized by the Eleventh Circuit, "[i]t is axiomatic that a strip search represents a serious intrusion upon personal rights." *Id.* at 192. In discussing the seriousness of a strip search of a juvenile, the Eleventh Circuit recognized that " '[c]hildren are especially susceptible to possible traumas from strip

searches .... "[Y]outh is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage." ' " *Id.* at 192–93 (citations omitted).

In addition to the Eleventh Circuit's opinion in *Justice,* 961 F.2d at 193, the Court relied upon the Eighth Circuit's decision in *Jones v. Edwards,* 770 F.2d 739, 741 (8th Cir.1985), in holding that the JDC's policy is unconstitutional. Similar to the arguments in *Jones,* the Defendants in this case raise security concerns as a justification for their blanket strip search policy. In *Jones,* the court rejected the argument that security concerns could justify a blanket policy of strip searching all persons arrested for minor offenses who were admitted to the jail without some individualized suspicion. 770 F.2d at 771–72. In an attempt to distinguish *Jones* from the present case, Defendants assert that the State has a higher governmental interest in protecting the security of juvenile detainees than it does in protecting adult detainees. Whether the Defendants have a heightened duty to protect juveniles, however, does not translate into higher security concerns and more intrusive searches. In discussing the serious security dangers in a detention center, police station or jail holding cell, the Eleventh Circuit held that, "[t]he considerations regarding contraband are the same whether the detainee is a juvenile or an adult." *Justice,* 961 F.2d at 193. The Court concurs with the Eleventh Circuit that officials in charge of a juvenile detention facility and an adult prison or jail have the same security concern: assuring that weapons and other contraband are not introduced into the secure facilities. Although controlling the admission of weapons and other contraband into the JDC present legitimate security concerns, as in *Jones,* these security concerns do not justi-

fy a blanket policy of strip searching all juveniles admitted to the JDC for non-felony and minor offenses.

The Defendants assert that, "[i]f the JDC abides by this Court's current holding and only searches juveniles when it has a reasonable suspicion to believe that they possess weapons or contraband, *undoubtedly*, some weapons and contraband will find their way into the JDC facility." (Defendants' Brief in Support of Motion for Reconsideration Under Rule 54(b), Doc. 130 at p. 10 (emphasis added).) The Court has already concluded, however, that the record in this case does not demonstrate that the incidence of smuggling weapons or contraband into the JDC is more than minimal. *See Smook*, 340 F.Supp.2d at 1045. There is an absence of evidence in the record to support the Defendants' broad prediction of what might happen if JDC staff are required to have reasonable suspicion before strip searching juveniles charged with minor or non-felony offenses.

In support of their claim that it is necessary to search all juveniles for weapons and other contraband, Defendants submitted an Affidavit of Todd Cheever, Doc. 88, the current Director of the JDC. He states that, "[u]pon admission to the JDC, juveniles *sometimes* attempt to introduce weapons or contraband into the facility." (Doc. 88, ¶ 3 (emphasis added).). Cheever further states that he has in his possession at the JDC "a large box of weapons and contraband representing materials found on admittees over the years." (Doc. 88, ¶ 4.) As the Court initially concluded, this evidence does not demonstrate that the incidence of smuggling weapons or contraband into the JDC is more than minimal. This evidence is inconclusive as to the time period within which the *one* large box of weapons or contraband was collected as well as what was contraband and what were weapons. More critical, this evidence fails to show that the weapons or

contraband were seized from juveniles charged with non-felony or minor offenses or that the weapons or contraband were discovered as a result of strip searches, rather than other less invasive searches that may be constitutionally performed by JDC staff. Thus, similar to the state officials in the Eighth Circuit's recent case, *Doe*, 380 F.3d at 352–53, the Defendants have, "in fact failed to demonstrate the existence of a need sufficient to justify the substantial intrusions upon the [juvenile]'s privacy interests that the search practice entails."

Another consideration the Defendants suggest should weigh heavily in favor of the reasonableness of the strip search policy is that the State acts as a *de facto* guardian of children lawfully removed from their home when they are in the custody of the JDC. The Defendants do not address, however, the distinction in the reasonableness inquiry the Eighth Circuit made from searches that, "can lead directly to the imposition of punitive criminal sanctions," from searches that will not lead to criminal sanctions. *Doe*, 380 F.3d at 355. If a search can lead to criminal sanctions, "[r]ather than acting *in loco parentis*, with the goal of promoting the students' welfare, the government officials conducting the searches are in large part playing a law enforcement role with the goal of ferreting out crime and collecting evidence to be used in prosecuting students." *Id.* Significantly, the JDC's written policy required law enforcement to remain at the JDC until a search was completed and required JDC staff to give any illegal contraband to the law enforcement officer:

> Only after the completion of the search is the officer to depart from the Center. Any illegal contraband (i.e. drug, weapons) found on a juvenile is to be taken by the police officer. If it was necessary for the officer to leave prior to the

search and contraband is found, contact the officer to come back and pick up the contraband. It is the officer's decision regarding further charges.

(Doc. 95, Ex. C at D 067.) Similar to the search policy in *Doe, supra*, the JDC's policy demonstrates that it is in large part playing a law enforcement role with the goal of ferreting out crime and collecting evidence to be used to prosecute the juveniles admitted to the JDC. Thus, in considering the character of the intrusion the JDC's strip search policy imposes, the JDC's law enforcement purposes for which the fruits of the strip searches are used does not weigh in favor of concluding that the invasion of the juveniles' privacy was insignificant.

The Defendants do not acknowledge the law enforcement purposes for conducting the strip searches at issue in this case and how the that purpose relates to the JDC's asserted purpose for conducting the strip searches, i.e. acting *in loco parentis*. Likewise, the Second Circuit in *N.G. v. Connecticut*, discusses a juvenile detention's responsibility to act *in loco parentis*, but it does not discuss how this responsibility relates to the law enforcement purposes for conducting strip searches on juveniles admitted for minor or non-felony offenses. 382 F.3d at 232. Thus, neither the Defendants nor the Second Circuit have evaluated a consideration that the Eighth Circuit has found highly relevant in evaluating the reasonableness of searches involving juveniles under the Fourth Amendment. *See Doe*, 380 F.3d at 355.

Another issue raised by Defendants is that they must be "alert for children who are angry about the arrest, violent, depressed, suicidal, gang members, under the influence of drugs or alcohol, etc." (Defendants' Brief, Doc. 130, at p. 8.) The fallacy with this argument is that if a juvenile being admitted to the JDC displays the behaviors or raises such concerns, JDC staff may have reasonable suspicion that such a juvenile is carrying or concealing weapons or contraband and a strip search would be allowed under the Court's holding. It is important to recognize that the Court's ruling does not prohibit all strip searches. Rather, the Court's holding requires a finding of individualized reasonable suspicion of carrying or concealing weapons or other contraband *before* conducting a strip search of a juvenile arrested for a minor or non-felony offense. Moreover, the Court's holding does not prohibit strip searching juveniles arrested for more offenses more serious than minor or non-felony offenses as those offenses are defined in the class definitions.

■ Defendants again assert that they must strip search all juveniles to allow JDC staff to detect abuse or neglect of juveniles. This argument was examined and rejected by the Court in the decision denying summary judgment to Defendants. *See Smook*, 340 F.Supp.2d at 1045. As the Court found, JDC staff do not have a *duty to detect* abuse or neglect of juveniles. *See id.* Moreover, there is no evidence in this record to demonstrate that JDC staff must conduct a strip search to detect abuse or neglect, rather than conducting a search or examination far less invasive than a strip search. While Defendants are attempting in this Motion to Reconsider to justify the JDC's strip search policy based upon a supposed "duty to detect abuse or neglect," Defendants do not address the harm inflicted on juveniles by a strip search, much less the harm that a strip search would cause an abused or neglected child. *See Justice*, 961 F.2d at 192–93 (recognizing that children are especially susceptible to possible traumas from strip searches).

In addition to the considerations discussed above, in denying Defendants' sum-

mary judgment motion on the strip search claim, the Court relied on several circuit court decisions (cited in footnote one below) that held strip searching arrestees of minor offenses without reasonable suspicion that an arrestee is carrying or concealing a weapon or other contraband violates that arrestee's Fourth Amendment rights. *See Smook,* 340 F.Supp.2d at 1043–46. While not repeated here, that decisional law was considered again in ruling on the Motion to Reconsider.

Having reconsidered the issue of the constitutionality of the JDC's strip search policy, and balancing the JDC's interests against the interests of the class members, the Court again holds that the JDC policy violates the class members' Fourth Amendment rights and that Plaintiff Smook's Fourth Amendment rights were violated when she was searched on August 9, 1999. The Court adheres to the prior holding that a minor charged with minor or non-felony offenses may be subjected to a strip search only if JDC officials possess a reasonable suspicion that the minor is carrying or concealing a weapon or other contraband. *See Smook,* 340 F.Supp.2d at 1046–47.

*B. Qualified Immunity*

■ The final issue to be decided on this motion for reconsideration is whether, in light of the Second Circuit's decision, Defendants Banbury and Cheever are entitled to qualified immunity. A two-part analysis is used to evaluate a qualified immunity defense: "[f]irst, [the court] must determine whether the plaintiff has alleged the violation of a constitutional right. Second, [the court] must determine whether that right was clearly established at the time of the alleged violation." *Manzano v. South Dakota Dep't of Soc. Serv.,* 60 F.3d 505, 509 (8th Cir.1995) (citations omitted). The qualified immunity defense is evaluated based upon the law existing at the time of the alleged violation. *See Sex-*

*ton v. Martin,* 210 F.3d 905, 909–10 (8th Cir.2000) (explaining that, "[i]t is only necessary that the unlawfulness of the official's act [be] apparent *in view of pre-existing law.*") (emphasis added). The class period began on November 1, 1997, as to minor offenses and on April 16, 1999, as to non-felony offenses. The strip search of the Plaintiff was conducted on August 9, 1999. Although the Court has not yet set the ending date for the class period, the Court has been advised that the strip search policy was changed as of December 31, 2003. (See Plaintiffs' Reply Memorandum, Doc. 125, November 15, 2004.) Thus, it questionable whether the Court should consider the Second Circuit's 2004 decision in *N.G. v. Connecticut,* 382 F.3d at 237, in determining what the state of the law was at the time of the alleged violations in this case.

As to the first part of the qualified immunity analysis, the Plaintiff, on behalf of herself and the class members, allege a violation of the Fourth Amendment of the United States Constitution, satisfying the first part. Thus, the remaining issue is whether it was clearly established during the class period that the JDC's written policy of strip searching juveniles admitted to the JDC on minor or non-felony offenses and without individualized suspicion that such juveniles were carrying or concealing weapons or other contraband violated the Plaintiff's and class members' Fourth Amendment rights. *See Sexton,* 210 F.3d at 910 (holding that, "if the law claimed to have been violated was clearly established, the qualified immunity defense ordinarily fails, 'since a reasonably competent public official should know the law governing his conduct.' ") (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

■ Discussing the "clearly established" requirement in the context of a qualified

immunity defense, the Supreme Court explained that, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The lack of a Supreme Court decision does not prevent a finding that a right is clearly established. The Eighth Circuit recognized that in determining whether a right is clearly established for purpose of the qualified immunity defense, "[i]n the absence of binding precedent, a court should look to all available decisional law including decisions of state courts, other circuits and district courts ...." *Burnham v. Ianni*, 119 F.3d 668, 677 (8th Cir. 1997) (quotation marks and citations omitted). The Eighth Circuit explained that in determining whether a right is "clearly established" in this circuit, the Court is to apply "a flexible standard, requiring 'some, but not precise factual correspondence' with precedent, and demanding that officials apply general, well-developed legal principles." *J.H.H. v. O'Hara*, 878 F.2d 240, 243 (8th Cir.1989). In addition, the Eighth Circuit further explained that it, " 'has ... taken a broad view of what constitutes "clearly established law" for the purposes of a qualified immunity inquiry ....' " *Sexton*, 210 F.3d at 909 (quoting *Boswell v. Sherburne County*, 849 F.2d 1117, 1121 (8th Cir.1988)).

In the Court's decision denying summary judgment on the strip search claim, eight federal courts of appeals' decisions were cited, in addition to the Eighth Circuit's decision in *Jones*, 770 F.2d at 742, that have held strip searching arrestees of minor offenses without reasonable suspicion that an arrestee is carrying or concealing a weapon or other contraband violates that arrestee's Fourth Amendment rights.[1] *See Smook*, 340 F.Supp.2d at 1043–44. The Court also cited a 1992

---

1. *See Masters v. Crouch*, 872 F.2d 1248, 1255 (6th Cir.1989) (holding that, "a strip search of a person arrested for a traffic violation or other minor offense not normally associated with violence and concerning whom there is no individualized reasonable suspicion that the arrestee is carrying or concealing a weapon or other contraband, is unreasonable [under the Fourth Amendment]."); *Chapman v. Nichols*, 989 F.2d 393, 395–97 (10th Cir.1993) (ruling that a strip search of arrestees pursuant to a jail's blanket policy requiring all detainees, including those arrested for minor traffic offenses and awaiting bail, to be subject to a strip search violated the plaintiffs' Fourth Amendment rights); *Weber v. Dell*, 804 F.2d 796, 802 (2d Cir.1986) (holding that strip-body cavity search of arrestee who had been arrested for misdemeanor offenses was unconstitutional where jail authorities has no reasonable suspicion that arrestee was concealing weapons or other contraband); *Stewart v. Lubbock County, Texas*, 767 F.2d 153, 156–57 (5th Cir.1985) (strip search policy applied to minor offenders awaiting bond when no reasonable suspicion existed that they as a category of offenders or individually might possess weapons or contraband violated the Fourth Amendment); *Giles v. Ackerman*, 746 F.2d 614, 615 (9th Cir.1984) (strip search of person arrested for minor traffic offenses held unconstitutional in absence of individualized suspicion) (overruled on other grounds); *Hill v. Bogans*, 735 F.2d 391, 394–95 (10th Cir. 1984) (held that routine strip searches in public area of persons detained for minor traffic offenses is unreasonable under Fourth Amendment); *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1273 (7th Cir.1983) (strip search of misdemeanor offenders who were not inherently dangerous and who were being detained only briefly while awaiting bond violated the Fourth Amendment); *Logan v. Shealy*, 660 F.2d 1007, 1013 (4th Cir.1981) (strip search of DWI arrestee was held unconstitutional). Common sense should guide those regularly dealing with juveniles that juveniles surely should not be treated more harshly than adults.

Eleventh Circuit Court of Appeals decision, in which it was held that strip searches of incarcerated juveniles will be upheld, but such searches require a showing of reasonable suspicion of possession of contraband. *See id.,* at 1048 (citing *Justice,* 961 F.2d at 190–91).

It is clear from the Court's discussion of *Jones* above that there is "some, but not precise factual correspondence" to this case. The factual correspondence between this case and *Jones* is that the plaintiffs were arrested for minor and non-felony offenses, they were held in custody, they were strip searched without individualized suspicion that they were carrying or concealing weapons or other contraband, the security purposes for the searches were the same, and if the state official performing the strip searches found any illegal items, those items would be seized by law enforcement officials and could result in criminal charges. The primary distinction advanced by Defendants is that *Jones* involved an adult rather than a juvenile arrestee. This distinction is based upon the Defendants' responsibility to act *in loco parentis* over juveniles, which, Defendants contend, heightens the Defendants' interest in locating weapons or contraband concealed by juveniles being admitted to the JDC to protect the juvenile being searched and the other juveniles in custody. The Eleventh Circuit, however, specifically held that the security interests in performing strip searches of juveniles and adults in custody is the same. *See Justice,* 961 F.2d at 193. Despite the asserted distinction between searching adults and juveniles, the Court finds that there is at least "some, but not precise factual correspondence" between *Jones* and this case and that the unlawfulness of the JDC's blanket strip search policy was apparent. *J.H.H.,* 878 F.2d at 243.

Moreover, from the "general, well-developed legal principles," *id.,* involving strip searches of persons arrested for minor offenses in the absence of individualized suspicion established by the all of the courts of appeals' decisions examined in the Court's decision on the summary judgment motions, a reasonable official would understand that the JDC's blanket strip search policy applied to juveniles arrested for minor or non-felony offenses violates those juveniles' Fourth Amendment rights.

Other than the Second Circuit's 2004 decision, the Defendants cannot cite to any case law with "some, but not precise factual correspondence" with the present case that holds a blanket strip search policy similar to the JDC policy at issue here is constitutional. In its 2004 decision, the Second Circuit acknowledged that it was not aware of an appellate ruling on the reasonableness of strip searches of juveniles in lawful state custody, *in the absence of individualized suspicion* of possession of contraband. *N.G. v. Connecticut,* 382 F.3d at 233 (emphasis added). Likewise, the Court is unaware of any circuit ruling, prior to the issuance of the Second Circuit's opinion, finding constitutional a strip search of a juvenile admitted to a juvenile detention facility who was arrested for minor or non-felony offenses in the absence of individualized suspicion of possession of weapons or other contraband.

The Court concludes that, having reexamined the grounds for denying qualified immunity in the initial decision, even in light of the decision in *N.G. v. Connecticut,* Defendants Banbury and Cheever are not entitled to qualified immunity in this action. In light of the Eighth Circuit's decision in *Jones,* 770 F.2d at 742, the Eleventh Circuit's decision in *Justice,* 961 F.2d at 193, the eight other courts of appeals decisions cited by the Court in footnote 1, and the lack of an appellate ruling that a strip search of a juvenile in lawful state custody in the absence of individualized

suspicion of possession of a weapon or other contraband until 2004, the Court finds the law was clearly established beginning in 1986 that JDC's policy of strip searching juveniles arrested for minor or non-felony offenses, without any individualized suspicion of possession of weapons or other contraband, violated such juveniles Fourth Amendment rights. *See Jones,* 770 F.2d at 742 n. 4 (denying qualified immunity to jail officials who conducted a strip search in 1981 on a person arrested for minor offenses without any suspicion that he was harboring weapons or contraband and holding that "the fourth amendment's protection against the kind of search of which Jones complains was well-established at the time his search took place."). Based upon the Court's discussion above, it cannot be said that Defendants Banbury's and Cheever's actions " 'could reasonably have been thought consistent with the rights they are alleged to have violated.' " *Gregoire v. Class,* 236 F.3d 413, 417 (8th Cir.2000) (quoting *Anderson,* 483 U.S. at 638, 107 S.Ct. 3034). The Court has considered the Motion to Reconsider on the issue of qualified immunity. Upon reconsideration, qualified immunity is again denied. Accordingly,

IT IS ORDERED:

(1) That the Defendants' Motion for Reconsideration, Doc. 129, is granted to the extent that the Court has reconsidered its ruling on the summary judgment motions as set forth in the Court's Memorandum Opinion and Order, Doc. 116, as to Plaintiffs' Fourth Amendment claim and the qualified immunity issue, and the Motion for Reconsideration is denied in all other respects.

(2) That after having considered Defendants' Motion for Reconsideration, Doc. 129, the Court again: (a) holds that the Minnehaha County Juvenile Detention Center's blanket policy of strip searching minors arrested for

minor or non-felony offenses, without any individualized determination of reasonable suspicion that the individual was or is likely to be carrying or concealing weapons, drugs or other contraband, violates the Fourth Amendment; (b) holds that the strip search of Plaintiff, Jodie Smook, violated her Fourth Amendment rights; and (c) denies qualified immunity to Defendants Jim Banbury and Todd Cheever on Plaintiffs' Fourth Amendment claim.