**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 1 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ROBERT LATTA,

       Plaintiff - Appellant,

    v.

OFFICER JAMES A. KERYTE;
OFFICER LARRY MONTOYA;
SERGEANT EUGENE CATANACH;
LIEUTENANT GILBERT BACA;
OFFICER JEFF McDERMOTT; JOHN
DENCO, JR., New Mexico State
Police Chief; ANTHONY ORTEGA,
Valencia County Sheriff; JOHN DOES,
one or more, in their official and
individual capacities; and BOARD OF
COUNTY COMMISSIONERS FOR THE
COUNTY OF VALENCIA,

       Defendants - Appellees.

No. 96-2124

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D. Ct. No. CIV-95-54-LCS/RLP)**

---

Submitted on the briefs:[*]

---

    [*]After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

Susan M. Morrison, The Branch Law Firm, Albuquerque, New Mexico, for Plaintiff-Appellant.

Jeffrey A. Dahl and Clayton E. Crowley, Lamb, Metzgar, Lines & Dahl, Albuquerque, New Mexico, for Defendants-Appellees.

———————————

Before ANDERSON, TACHA, and BALDOCK, Circuit Judges.

———————————

TACHA, Circuit Judge.

———————————

Plaintiff Robert Latta filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of his Fourth and Fourteenth Amendment rights. Mr. Latta appeals the Memorandum Opinion and Order of the magistrate judge granting summary judgment in favor of the defendants on the basis of qualified immunity. For the reasons set forth below, we affirm.

## BACKGROUND

On October 30, 1993, the dispatcher at the Albuquerque State Police Office informed Officer James Keryte that a possibly intoxicated driver was slumped over the steering wheel of a white Pinto parked on the northbound shoulder of Interstate 25 near the North Belen exit. Officer Keryte responded to the dispatch and proceeded to the location. He identified the Pinto and parked his patrol car 25 to 30 feet behind the vehicle.

As Officer Keryte parked his patrol car, he made a number of observations. Consistent with the dispatcher's information, he noticed that the driver was leaning over the steering wheel. Officer Keryte also observed that the driver was looking at him using his rearview and outside mirrors. Officer Keryte noted that the driver was fumbling with something underneath the seat. At this point, Officer Keryte called the dispatcher and described his location and the license number of the Pinto.

Officer Keryte exited his vehicle and approached the Pinto from the passenger's side. He noticed that the driver appeared unclean and that his clothes were unkempt and dirty. Officer Keryte believed that the driver's appearance indicated that he had been on a drinking binge. As Officer Keryte approached the Pinto, he asked the driver if he was okay. He also asked the driver to get out of the car. Officer Keryte received no response to his questions.

Officer Keryte then approached the vehicle from the driver's side. As he made the approach, the driver locked his door and rolled up his window. Officer Keryte again asked the driver if he was all right and if he would step out of the car. As before, he received no reply. Officer Keryte asked for a driver's license and registration. The driver did not respond. Instead, the driver asked for Officer Keryte's identification. As Officer Keryte reached into his wallet to produce the

identification, the driver started his car and drove off. Officer Keryte yelled at him to stop, but he continued driving.

Officer Keryte ran to his patrol car, informed the dispatcher about what had happened, engaged his emergency equipment, and began pursuing the Pinto. Using his radar, Officer Keryte determined that the man was traveling at an average of 50 mph in a 65 mph zone.

After Officer Keryte caught up with the Pinto, he attempted to pass the car. Each time, however, the driver swerved his car to prevent Officer Keryte from passing. Officer Keryte became concerned that the driver would leave Interstate 25 and travel into a populated area where he might cause an accident. Officer Keryte attempted to stop the car by twice bumping it from behind, but the driver continued in a northerly direction.

Officer Keryte contacted his supervisor on duty, Sergeant Eugene Catanach, to request permission to use other means to stop the driver. Officer Keryte requested and received permission to shoot out the car's tires.

Officer Keryte stopped his patrol car and retrieved a rifle from the trunk. He rolled down the passenger side window and rested the gun on the window frame of the passenger door. Officer Keryte then continued his pursuit, eventually catching up with the Pinto.

As Officer Keryte pulled up to the Pinto, he shot the Pinto's left rear tire, which immediately went flat. Officer Keryte then backed off for a moment to see if the car would stop. The driver, however, continued. Officer Keryte then shot the Pinto's left front tire. At some point, the barrel of Officer Keryte's weapon passed by the driver.

In the meantime, officers from the Valencia County Sheriff's Department and the Los Lunas Police Department constructed a two-car roadblock at the Los Lunas Exit in order to stop the Pinto. The driver stopped his car about 40 to 50 feet from the roadblock.

Officer Keryte exited his patrol car and approached the Pinto from the driver's side with his weapon drawn. At the same time, the Valencia County and Los Lunas officers approached the front of the vehicle with their weapons drawn.

Officer Keryte asked the man to get out of the Pinto but he did not comply. Therefore, Officer Keryte knocked out the driver's side window with the barrel of his gun and unlocked the door. He attempted to remove the man from the Pinto, but the man grabbed the steering wheel and resisted. Officer Keryte and two other officers forcibly removed the man from the Pinto. The officers placed him face down on the ground and restrained his hands and feet.

Officer Keryte retrieved the man's driver's license and contacted the dispatcher. The dispatcher informed Officer Keryte that the Pinto was registered

to Margaret Brock. The dispatcher told Officer Keryte that the authorities had contacted Ms. Brock. Ms. Brock explained that the man in the Pinto was her son, Robert Latta, and that he suffered from paranoid schizophrenia.

After the officers restrained Mr. Latta, he apparently began hyperventilating. Officer Keryte called an ambulance as a precaution. When the ambulance arrived at the scene, one of the paramedics observed that Mr. Latta suffered from swollen ankles and mild abrasions on his wrists and over his left eye. The paramedic, however, did not consider the wrist and ankle restraints to be tight.

With the officers' help, the paramedics placed Mr. Latta on a gurney and placed a soft cotton bandage on Mr. Latta's wrists and ankles. The paramedics then transported Mr. Latta to the University of New Mexico emergency room. He was treated and then admitted to the University of New Mexico Mental Health Unit for treatment and observation. Mr. Latta was never formally arrested.

Mr. Latta filed this suit pursuant to 42 U.S.C. § 1983 alleging violations of his Fourth and Fourteenth Amendment rights.[1] He also brought several state law

---

[1] In his complaint, Mr. Latta's named "all defendants" in his Fourteenth Amendment due process claim. R. at 115. On appeal, Mr. Latta argues that only Officer Keryte violated his due process rights.

Mr. Latta also brought a § 1983 claim based on failure to train and supervise against Officer Keryte, Officer Montoya, Sergeant Catanach, Lieutenant Baca, Officer McDermott, and the unnamed John Does. This federal claim is not in issue on appeal.

claims.[2] The parties agreed to have a magistrate hear the case pursuant to 28 U.S.C. § 636(c)(1). The defendants moved for summary judgment on all of the claims based on qualified immunity. On May, 17, 1996, the magistrate granted the defendants' motion for summary judgment with respect to the federal claims but declined to address whether to exercise supplemental jurisdiction over the state tort claims. The magistrate entered a final judgment with respect to the federal claims under Federal Rule of Civil Procedure 54(b), and Mr. Latta filed a timely notice of appeal. We exercise jurisdiction pursuant to 28 U.S.C. §§ 1291 and 636(c)(3).[3]

## DISCUSSION

### I. SUMMARY JUDGMENT AND QUALIFIED IMMUNITY STANDARDS

In granting summary judgment in favor of the defendants, the magistrate concluded that the defendants were entitled to qualified immunity on Mr. Latta's

---

[2] Mr. Latta brought state law claims based on (1) assault, (2) battery, (3) false arrest, (4) false imprisonment, and (5) failure to train and supervise against Officer Keryte, Officer Montoya, Sergeant Catanach, Lieutenant Baca, Officer McDermott, and the unnamed John Does. Mr. Latta also brought a state law claim against Officer Keryte for arrest without a warrant in violation of N.M. Stat. Ann. § 66-8-125. None of these state law claims are in issue on appeal.

[3] On June 25, 1996, we issued a show cause order instructing the parties to address whether the magistrate's order dismissing Mr. Latta's federal claims was a final appealable order. On July 1, 1996, the district court entered an order certifying the dismissal order under Rule 54(b). The jurisdictional issue was referred to this panel on September 13, 1996. We conclude that we have jurisdiction pursuant to Rule 54(b) and 28 U.S.C. § 1291.

Fourth and Fourteenth Amendment claims. We review the magistrate's grant of qualified immunity on summary judgment de novo, applying the same standard used by the magistrate under Federal Rule of Civil Procedure 56(c). Romero v. Fay, 45 F.3d 1472, 1475 (10th Cir. 1995). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing the record, "[w]e view the evidence and draw any inferences therefrom in the light most favorable to the party opposing summary judgment." Coosewoon v. Meridian Oil Co., 25 F.3d 920, 929 (10th Cir. 1994).

A government official is entitled to qualified immunity from civil damages when his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In analyzing a qualified immunity claim, we use a two-part framework. "[F]irst we determine whether the plaintiff has asserted a violation of a constitutional or statutory right, and then we decide whether that right was clearly established such that a reasonable person in the defendant's position would have known that [his or] her conduct violated the right."

Garramone  v. Romo, 94 F.3d 1446, 1449 (10th Cir. 1996) (citing Siegert v.

Gilley, 500 U.S. 226, 231 (1991)).

In this appeal, Mr. Latta asserts that the defendants violated his clearly

established Fourth Amendment rights to be free from an unlawful seizure

because:  (1) Officer Keryte did not have reasonable suspicion to seize him during

the initial investigative stop, (2) the defendants did not have reasonable suspicion

or probable cause to seize him at the roadblock, and (3) the defendants used

excessive force in seizing him at the roadblock.  Mr. Latta also argues that

Officer Keryte violated his clearly established Fourteenth Amendment due

process rights in pursuing him after he exercised his right to terminate the initial

encounter at the roadside.[4]  As we discuss below, this case presents the classic

situation in which a plaintiff's own actions in reaction to a legitimate law

enforcement encounter result in escalating volatility and danger justifying the

subsequent actions of the law enforcement officers involved.  We therefore reject

---

[4] Mr. Latta contends that the magistrate did not use the correct legal standards in
determining whether Officer Keryte had reasonable suspicion to detain Mr. Latta during
the initial encounter.  Mr. Latta also asserts that the magistrate used the wrong standard in
evaluating Mr. Latta's due process claim during the pursuit.  Because we conclude that
Mr. Latta was not "seized" during the initial roadside encounter and that Officer Keryte
acted reasonably in pursuing Mr. Latta, we need not consider Mr. Latta's challenge to the
legal standards employed by the magistrate.  See Gallegos v. City of Colorado Springs, ---
F.3d ----, No. 96-1298, 1997 WL 280117, at *7 n.5 (10th Cir. May 28, 1997) ("[O]ur
determination that the stop of Mr. Gallegos was supported by a reasonable suspicion that
Mr. Gallegos was engaged in criminal activity renders irrelevant Mr. Gallegos' challenge
to the legal standard employed by the trial court.").

Mr. Latta's contentions that the defendants violated his rights under the Fourth

and Fourteenth Amendments.

## II.    THE FOURTH AMENDMENT CLAIMS

### A.    Introduction to the Fourth Amendment

The Fourth Amendment protects individuals against "unreasonable searches

and seizures."  U.S. CONST. AMEND. IV.  In determining whether a seizure

comports with the strictures of the Fourth Amendment, we have identified three

categories of police-citizen encounters:  "(1) consensual encounters which do not

implicate the Fourth Amendment, (2) investigative detentions which are Fourth

Amendment seizures of limited scope and duration and must be supported by a

reasonable suspicion of criminal activity, and (3) arrests, the most intrusive of

Fourth Amendment seizures and reasonable only if supported by probable cause."

United States v. Davis, 94 F.3d 1465, 1567-68 (10th Cir. 1996) (citations

omitted).

"[N]ot all police-citizen encounters implicate the Fourth Amendment."

United States v. King, 990 F.2d 1552, 1556 (10th Cir. 1993).  "[A] person has

been 'seized' within the meaning of the Fourth Amendment only if, in view of all

the circumstances surrounding the incident, a reasonable person would have

believed that he was not free to leave."  United States v. Mendenhall, 446 U.S.

544, 554 (1980).  Thus, mere police questioning does not amount to a seizure

because "'law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place.'" King, 990 F.2d at 1556 (quoting Florida v. Bostick, 501 U.S. 429, 434 (1991)). Unless the officer's show of authority succeeds in restraining the person, the person has not been "seized" within the meaning of the Fourth Amendment. Bella v. Chamberlain, 24 F.3d 1251, 1256 (10th Cir. 1994).

When a police-citizen encounter rises to the level of a seizure, the seizure must be supported by the requisite level of suspicion or probable cause. For example, a police officer who observes suspicious circumstances may stop an individual briefly to investigate the circumstances provoking suspicion. Terry v. Ohio, 392 U.S. 1, 21 (1968). In analyzing whether such an investigative detention complies with the Fourth Amendment, we must determine whether the officer has reasonable suspicion to detain the individual. Id. Reasonable suspicion "requires considerably less than proof of wrongdoing by a preponderance of the evidence, but something more than an inchoate and unparticularized suspicion or hunch." United States v. Melendez-Garcia, 28 F.3d 1046, 1051 (10th Cir. 1994) (internal quotations omitted). The officer must be "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21.

In contrast to investigative detentions, formal arrests or seizures that resemble formal arrests must be supported by probable cause. <u>Michigan v. Summers</u>, 452 U.S. 692, 700 (1981). "Probable cause to arrest exists when officers have knowledge of facts that would warrant a person of reasonable caution in the belief that an offense has been or is being committed." <u>United States v. Bruce</u>, 78 F.3d 1506, 1508 (10th Cir.) (quotations omitted), <u>cert. denied</u>, 117 S. Ct. 149 (1996). In determining whether probable cause exists, we look to the "circumstances as they would have appeared to a prudent, cautious, trained police officer." <u>United States v. Morgan</u>, 936 F.2d 1561, 1568 (10th Cir. 1991).

**B.      The "Seizure" of Mr. Latta**

Mr. Latta asserts that the defendants violated his clearly established Fourth Amendment rights by seizing him during the initial encounter and at the roadblock. In reviewing this claim, we begin by determining when Mr. Latta was "seized" within the meaning of the Fourth Amendment. Viewing the record in a light most favorable to the plaintiff, we hold that Mr. Latta's Fourth Amendment rights were implicated neither during the initial encounter on the roadside nor during the unsuccessful pursuit of Mr. Latta on the interstate. Instead, the record shows that Mr. Latta was "seized" only when the defendants stopped him at the roadblock.

Contrary to the parties' assertions and the magistrate's conclusion, Officer Keryte's initial interaction with Mr. Latta on the roadside was merely a consensual encounter between a private citizen and a law enforcement officer which did not implicate the Fourth Amendment. As we discussed above, a seizure does not occur simply because a police officer approaches an individual, asks questions, or requests identification. Bostick, 501 U.S. at 434. We recently explained:

> Without any basis for suspecting the criminal involvement of a particular individual, police may communicate and ask questions of that individual. . . . Courts have identified several factors that could lead a reasonable innocent person to believe that he is not free to disregard the police officer, including: the threatening presence of several officers; the brandishing of a weapon by an officer; some physical touching by an officer; use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; prolonged retention of a person's personal effects such as identification and plane or bus tickets; a request to accompany the officer to the station; interaction in a nonpublic place or a small, enclosed space; and absence of other members of the public.

United States v. Sanchez, 89 F.3d 715, 718 (10th Cir. 1996).

None of these factors is present in this case. Officer Keryte alone encountered Mr. Latta on a public highway. As Officer Keryte approached the car, he did not display a weapon or make any physical contact with Mr. Latta. Instead, Officer Keryte inquired if Mr. Latta was okay and asked him to get out of the car. When he received no response, Officer Keryte asked for a driver's license and registration. Instead of complying with Officer Keryte's request, Mr.

- 13 -

Latta asked Officer Keryte for his identification. As Officer Keryte reached for his wallet, Mr. Latta drove off. Viewing the record in a light most favorable to the plaintiff, we conclude that, under the totality of the circumstances, Officer Keryte's conduct would not have communicated to a reasonable person that the person was not free to leave or otherwise terminate the encounter. Mendenhall, 446 U.S. at 554. Thus, we hold Officer Keryte did not "seize" Mr. Latta within the meaning of the Fourth Amendment during the initial roadside encounter.

We also hold that Officer Keryte's unsuccessful pursuit of Mr. Latta on the interstate was not a "seizure" within the meaning of the Fourth Amendment. While the pursuit constituted an assertion of authority, the pursuit did not cause Mr. Latta to submit to the authority or succeed in stopping him. Bella, 24 F.3d at 1256 ("[W]hen law enforcement officers shoot at a fleeing suspect, a 'seizure' occurs only if the shot strikes the fleeing person or if the shot causes the fleeing person to submit to this show of authority."). The record shows that Mr. Latta stopped his car only when he approached the roadblock. Under such circumstances, we hold that no seizure occurred during Officer Keryte's pursuit of Mr. Latta on the interstate. See California v. Hodari D., 499 U.S. 621, 628 (1991) (noting that in Brower v. Inyo County, 489 U.S. 593, 596 (1989), the Court did not even consider the possibility that a seizure could have occurred

- 14 -

during the course of a twenty-mile chase that did not end until the decedent crashed into a police-erected blockade).

After reviewing the record in a light most favorable to the plaintiff, we hold that Mr. Latta was "seized" only when the defendants succeeded in stopping him at the roadblock. Given this conclusion, we now address Mr. Latta's assertion that the defendants violated his clearly established Fourth Amendment rights because this seizure was unreasonable. Mr. Latta argues that the defendants lacked either reasonable suspicion or probable cause to seize him at the roadblock. He also asserts that the defendants used excessive force in detaining him at the roadblock.

## C. The Reasonableness of the Roadblock Seizure

### 1. Probable Cause to Arrest

Mr. Latta argues that he was seized in violation of the Fourth Amendment because the defendants did not have either reasonable suspicion or probable cause to stop him.[5] Mr. Latta acknowledges that he was never formally arrested. Nevertheless, in asserting that the defendants lacked probable cause, Mr. Latta

---

[5] The magistrate did not discuss whether the seizure at the roadblock constituted an investigative detention or an arrest. In determining that the seizure was lawful, however, the magistrate stated that Officer Keryte "had an articulable and reasonable suspicion that the Plaintiff was about to commit a crime." Memorandum Opinion and Order, at 7. Thus, the magistrate apparently concluded that the seizure at the roadblock constituted an investigative detention.

- 15 -

apparently argues that the defendants' conduct at the roadblock amounted to a de facto arrest requiring probable cause. Because we find that the record clearly shows that the defendants had probable cause to arrest Mr. Latta at the roadblock, we need not decide whether the detention of Mr. Latta at the roadblock was an investigative detention or a de facto arrest.

The incident at issue in this case began when Officer Keryte was informed that a possibly intoxicated driver was slumped over the steering wheel of a white Pinto parked on the northbound shoulder of Interstate 25. As Officer Keryte approached the Pinto, he saw a man leaning over the steering wheel. Officer Keryte thought the man was fumbling with something underneath the seat, possibly to hide a bottle or something else he did not want Officer Keryte to see. Officer Keryte noticed that the man's clothes were unkempt and dirty. Officer Keryte thought that the man's appearance indicated that he had been drinking. As Officer Keryte attempted to speak to the man, he rolled his window up, possibly to hide the smell of alcohol. Officer Keryte then asked Mr. Latta a number of questions, but he received no reply. Rather than cooperate with Officer Keryte's lawful investigation, however, Mr. Latta drove away without explanation.

Officer Keryte attempted to stop Mr. Latta by engaging his emergency equipment. He also bumped the rear of Mr. Latta's car to force him to stop. As Mr. Latta continued to evade Officer Keryte, he demonstrated objective behavior

indicating possible intoxication.  On two or three occasions, Mr. Latta swerved his car to prevent Officer Keryte from passing him.  By swerving, Mr. Latta substantiated Officer Keryte's suspicions that Mr. Latta had been driving while intoxicated.

In sum, we hold that under totality of the circumstances—including the facts surrounding the initial roadside encounter and Mr. Latta's erratic driving behavior—Officer Keryte had probable cause to arrest Mr. Latta at the roadblock for driving while intoxicated under N.M. Stat. Ann. § 66-8-102.[6]  Thus, we hold that Officer Keryte did not violate Mr. Latta's Fourth Amendment rights by seizing him at the roadblock.

### 2.    Excessive Force

Mr. Latta argues that the defendants violated his clearly established Fourth Amendment rights because they used excessive force in detaining him at the roadblock.  In addressing an excessive force claim, we must ascertain whether the arresting officer's actions were objectively reasonable.  See Graham v. Connor, 490 U.S. 386, 397 (1989).  In Graham, the Supreme Court explained:

> [T]he "reasonableness" of a particular use of force must be judged
> from the perspective of a reasonable officer on the scene, rather than

---

[6]  We note that Officer Keryte had probable cause to believe that Mr. Latta had committed numerous other offenses.  See, e.g., N.M. Stat. Ann. § 30-22-1 (resisting an officer); § 30-22-21 (assaulting a police officer); § 66-8-113 (reckless driving); § 66-8-114 (careless driving).

with the 20/20 vision of hindsight. . . . With respect to a claim of excessive force . . . [n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

Id. at 396-97 (internal citations and quotations omitted). Relevant factors in determining whether the force used by an arresting officer was objectively reasonable include the severity of the crime, whether the subject posed an immediate threat to the safety of the officer, and whether the subject was resisting arrest. Wilson v. Meeks, 52 F.3d 1547, 1553 (10th Cir. 1995).

We hold that the defendants' use of force at the roadblock was reasonable under the totality of the circumstances. Although Mr. Latta was never formally arrested for any crime, a reasonable officer at the time would have concluded that Mr. Latta posed a danger to himself and other motorists. He was swerving on the road, which caused the officers to believe that he was possibly intoxicated. Officer Keryte attempted to stop Mr. Latta by using his emergency equipment, bumping the car from behind, and shooting out his tires. After refusing to pull over, Mr. Latta finally stopped at the roadblock. The officers, not knowing whether Mr. Latta was armed, had their weapons drawn as they approached the vehicle. Mr. Latta still refused to get out of the car. Officer Keryte broke the window of the car to unlock the door. Mr. Latta grabbed the steering wheel and

- 18 -

resisted the officers as they tried to remove him from the car. When the officers finally removed him from the vehicle, they cuffed his hands and legs and placed him on the ground. Later, when the officers suspected that Mr. Latta was hyperventilating, they called an ambulance. As soon as the officers learned that Mr. Latta suffered from mental problems, they released him into the custody of the medical personnel. Under such circumstances, we conclude that the defendants' behavior was objectively reasonable. Thus, we hold that the defendants did not use excessive force in detaining Mr. Latta at the roadblock in violation of the Fourth Amendment.

## III. FOURTEENTH AMENDMENT CLAIM

Mr. Latta argues that Officer Keryte violated his clearly established Fourteenth Amendment substantive due process rights by using excessive force during the pursuit. See Bella 24 F.3d at 1257. As in Bella, "[w]ithout deciding the issue, we assume that excessive force claims arising outside the context of a seizure still may be analyzed under substantive due process principles." Id.

The Fourteenth Amendment Due Process Clause protects citizens from governmental deprivation of life, liberty and property without due process of law. "Under the due process standard, the factors relevant to whether the use of force is excessive are: (1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the . .

. officer." Hannula v. City of Lakewood, 907 F.2d 129, 131-32 (10th Cir. 1990).
Force inspired by malice or by "unwise, excessive zeal amounting to an abuse of
official power that shocks the conscience . . . may be redressed under [the
Fourteenth Amendment]." Hewitt v. City of Truth or Consequences, 758 F.2d
1375, 1379 (10th Cir. 1985). In this case, the evidence, viewed in a light most
favorable to Mr. Latta, "fail[s] to meet this high threshold." Bella, 24 F.3d at
1257.

First, Officer Keryte's use of force during the pursuit was not unreasonable
given the need presented. Faced with a possibly intoxicated driver, Officer
Keryte attempted to stop Mr. Latta by engaging his emergency equipment. When
that failed, Officer Keryte tried bumping Mr. Latta from behind to get him to pull
over. Officer Keryte tried to pass Mr. Latta, but Mr. Latta swerved his car to
prevent the patrol car from passing. Officer Keryte, concerned that a possibly
intoxicated driver would injure himself or others, contacted his supervisor to get
permission to shoot out the tires. Although Officer Keryte used potentially deadly
force in order to stop Mr. Latta, the force was not grossly disproportionate to the
need presented.

Second, the extent of Mr. Latta's injury was minimal. Mr. Latta admits that
Officer's actions during the pursuit did not cause him any physical injury. App't.

Brief, at 48.[7] As we stated in <u>Bella</u>: "[W]e have never upheld an excessive force claim without some evidence of physical injury." <u>Bella</u>, 24 F.3d at 1257 (citing cases).

Finally, the record does not demonstrate that Officer Keryte acted with any improper motive or malice. Indeed, as in <u>Bella</u>, 24 F.3d at 1258, Mr. Latta apparently concedes that Officer Keryte was not inspired by malice. Instead, he contends that Officer Keryte acted with excessive zeal amounting to an abuse of official power that shocks the conscience. As we discussed above, however, the record indicates that Officer Keryte's actions were objectively reasonable under the totality of the circumstances. We therefore conclude that the magistrate did not err in concluding that Officer Keryte was entitled to qualified immunity on Mr. Latta's substantive due process claim.

## CONCLUSION

For the foregoing reasons, we hold that Mr. Latta has failed to establish that the defendants violated his Fourth or Fourteenth Amendment rights. We therefore AFFIRM the magistrate's Memorandum Opinion and Order granting the defendants' motion for summary judgment on Mr. Latta's Fourth and Fourteenth Amendment claims.

---

[7] Mr. Latta acknowledges that his physical injuries (some mild abrasions and swollen ankles) occurred when the defendants detained him at the roadblock and not during Officer Keryte's pursuit.