**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 30 1998**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

DAVID CRAIG CARLSEN,

  Plaintiff-Appellant,

v.

TIM G. DURON, BRIAN COY,
LEM R. EARL, and KENT HARRIS,
individually and in their official
capacities as Logan City Police
Officers; and SCOTT L. WYATT,
in his official capacity as Logan City
Prosecutor,

  Defendants-Appellees.

No. 97-4071
(D.C. No. 93-CV-67G)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **ANDERSON**, **McKAY**, and **LUCERO**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiff David Craig Carlsen appeals the district court's grant of summary judgment in favor of defendants on his 42 U.S.C. § 1983 complaint. Defendants are four Logan City police officers sued as individuals and in their official capacities, and the Logan City prosecutor, sued in his official capacity. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part and reverse in part.

## I. Background

Mr. Carlsen filed two complaints: the first filed against defendants Duron, Coy and Earl, who are Logan City police officers, and Wyatt, a Logan City prosecutor; the second filed against defendants Earl and Harris, also a Logan City police officer. The district court consolidated these actions, and defendants filed a motion for summary judgment. Defendants asserted qualified immunity as to all of the police officer defendants, and absolute prosecutorial immunity as to Wyatt. The district court granted summary judgment in favor of the defendants.

## II. Analysis

"We review de novo the district court's grant of qualified immunity on summary judgment, viewing the evidence in the light most favorable to the nonmoving party." Davis v. Gracey, 111 F.3d 1472, 1478 (10th Cir. 1997).

In order to prevail against a defense of qualified immunity in a summary judgment motion, a plaintiff must first assert the violation of a constitutional or statutory right. See id. Second, a plaintiff must show that the "'right was clearly established such that a reasonable person in the defendant's position would have known that [his] conduct violated the right.'" Id. (quoting Garramone v. Romo, 94 F.3d 1446, 1449 (10th Cir. 1996)). "Once the plaintiff has sufficiently alleged the conduct violated clearly established law, then the defendant bears the burden, as a movant for summary judgment, of showing no material issues of fact remain that would defeat the claim of qualified immunity." Romero v. Fay, 45 F.3d 1472, 1475 (10th Cir. 1995) (quotation omitted). With these principles in mind, we turn to each of Carlsen's claims.

A. Driver's License Check. Mr. Carlsen alleges that on May 15, 1991, Officer Coy ordered him out of his place of employment, told him he was suspected of driving on a suspended license, and asked to see Carlsen's driver's license. Once Officer Coy saw Carlsen's valid driver's license, he told him he was free to leave. Mr. Carlsen alleges that Officer Coy's conduct constituted a seizure without reasonable suspicion or probable cause in violation of the Fourth and Fourteenth Amendment. He also charges Officer Earl, who was Coy's watch commander during this incident, violated his civil rights by failing to stop Coy's actions.

Officer Coy alleged that he had seen Carlsen driving and mistook him for Carlsen's brother, who he knew had a suspended license. Coy alleged that a radio check indicated the vehicle he saw was registered to Carlsen's brother. Officer Earl alleged he was never at the scene and has no personal knowledge of the incident. Mr. Carlsen disputed the reasonableness of mistaking him for his brother and showed that the car identified by Officer Coy was registered to him, not his brother. These disputes, however, are not material because Officer Coy's actions did not constitute a "seizure" under the Fourth Amendment.

"The Fourth Amendment protects individuals against 'unreasonable searches and seizures.'" Latta v. Keryte, 118 F.3d 693, 698 (10th Cir. 1997) (quoting U.S. Const. amend. IV). However:

> [N]ot all police-citizen encounters implicate the Fourth Amendment. A person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Thus, mere police questioning does not amount to a seizure because law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place.

Id. (internal quotations and citations omitted). "Without any basis for suspecting the criminal involvement of a particular individual, police may communicate and ask questions of that individual." United States v. Sanchez, 89 F.3d 715, 718 (10th Cir. 1996).

Mr. Carlsen's allegations that Officer Coy asked him to come outside his place of employment, asked him some questions and requested to see his driver's license do not demonstrate that he was "seized" within the meaning of the Fourth Amendment. None of the factors we have identified as tending to lead a reasonable innocent person to believe he was not free to ignore the police officer are alleged here. See id. (listing factors, including the threatening presence of several officers; brandishing a weapon; physical touching; use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; prolonged retention of a person's personal effects; a request to accompany the officer to the station; interaction in a nonpublic place or a small, enclosed space; and absence of other members of the public.). Because Officer Coy's brief interaction with Mr. Carlsen was not a "seizure," he was not required to have reasonable suspicion or probable cause. See Latta, 118 F.3d at 699. Thus, Mr. Carlsen did not allege facts that constitute a violation of his constitutional rights, and summary judgment on this claim was proper.

B. Assault at the Car Wash. Four days after the driver's license incident, on May 19, 1991, Officer Duron, who was off-duty and not in uniform, attempted to wash his police car at Mr. Carlsen's parent's car wash, where Carlsen was working at the time. Mr. Carlsen contends he was walking near the car wash bay

and refused to allow Duron to clean his vehicle because it was too muddy. Mr. Carlsen alleges that Officer Duron then got out of his vehicle, demanded that he be allowed to wash the car, and then verbally and physically assaulted Carlsen. Mr. Carlsen states he then broke free from Officer Duron, ran into the car wash office, but Duron followed him inside, threw him to the ground and handcuffed him. Mr. Carlsen's brother filed an affidavit stating that he saw Officer Duron choke Mr. Carlsen and slam his head to the floor in the car wash office.

At some time during this incident, Officer Duron called for police assistance, and Officer Earl arrived on the scene. Mr. Carlsen was put into a police vehicle and taken to jail, where he was charged with assault upon a peace officer. After he was released, Mr. Carlsen sought medical treatment for his throat injuries. Mr. Carlsen was later convicted of assault upon a peace officer, but the judge reduced the charge to simple assault, finding that Officer Duron was not acting as a peace officer when he was washing his police vehicle off-duty.

Mr. Carlsen alleges that Officer Duron used excessive force, and that Officers Duron and Earl arrested him without probable cause, in violation of the Fourth and Fourteenth Amendment. Officer Duron did not file an affidavit or otherwise controvert any of Mr. Carlsen's allegations about the car wash incident.

Mr. Carlsen and Officer Earl dispute whether Earl arrived in time to prevent the alleged wrongful arrest and use of excessive force.

The Fourth Amendment's guarantee of an individual's right not to be arrested without probable cause was clearly established well before Mr. Carlsen's arrest. See Beck v. Ohio, 379 U.S. 89, 91 (1964). It was also clearly established at the time of this incident that citizens have the right under the Fourth Amendment to be free from the use of excessive force by government officials. See Graham v. Connor, 490 U.S. 386, 395 (1989); Mick v. Brewer, 76 F.3d 1127, 1135 (10th Cir. 1996).

However, "[t]o state a claim under § 1983, a plaintiff must allege that the claimed deprivation was committed by a person acting under color of state law." Haines v. Fisher, 82 F.3d 1503, 1508 (10th Cir. 1996). "[I]t is the plaintiff's burden to plead, and ultimately establish, the existence of 'a real nexus' between the defendant's conduct and the defendant's 'badge' of state authority in order to demonstrate action was taken 'under color of state law.'" Jojola v. Chavez, 55 F.3d 488, 494 (10th Cir. 1995). "'[T]he key determinant is whether the actor, at the time in question, purposes to act in an official capacity or to exercise official responsibilities pursuant to state law,' or 'whether [the officer's] actions related in some way to the performance of a police duty.'" David v. City & County of Denver, 101 F.3d 1344, 1353 (10th Cir. 1996) (quoting Martinez v.

Colon, 54 F.3d 980, 986 (1st Cir. 1995) and Gibson v. City of Chicago, 910 F.2d 1510, 1517 (7th Cir. 1990)).

Mr. Carlsen's assault conviction represents a defense to his § 1983 claim asserting Officers Duron and Earl arrested him without probable cause. See Cameron v. Fogarty, 806 F.2d 380, 388-89 (2d Cir. 1986) (conviction following jury trial); see also Howard v. Dickerson, 34 F.3d 978, 981 n.2 (10th Cir. 1994) (dicta). Moreover, the state court found, in connection with Mr. Carlsen's assault conviction, that there was no evidence Officer Duron, who was off-duty and not in uniform, was acting within the scope of his authority as a peace officer at the time. Appellee's Answer Brief, Addendum B at 4. We conclude from our review of the record that Mr. Carlsen has not satisfied his burden of demonstrating that Officer Duron's alleged actions related in some way to the performance of a police duty. Therefore, because Mr. Carlsen was convicted of assault and because he did not demonstrate that Officer Duron's alleged actions were taken under color of state law, the district court properly granted summary judgment in favor of Officers Duron and Earl on the claims related to the car wash incident.

C. DUI Arrest. On September 13, 1992, Officer Harris and Logan City police officer Bryan Low, who is not a defendant, stopped Mr. Carlsen in his automobile at approximately 1:30 in the morning. According to Mr. Carlsen, the officers told him he was being stopped for changing lanes too fast. Mr. Carlsen

alleges that shortly after the stop, Officer Earl arrived and observed the following interaction from his police vehicle. The officers ordered Mr. Carlsen out of the car. The parties dispute whether Mr. Carlsen was ordered, or volunteered, to take a field sobriety test. The parties also dispute whether Mr. Carlsen successfully completed this test, but do not dispute that at its conclusion, Mr. Carlsen was handcuffed, searched, and arrested for driving under the influence of alcohol. Mr. Carlsen was taken to the county jail, where he was given a breathalyser test that indicated he had a blood alcohol level of zero percent. Mr. Carlsen was then released; he was not cited for any traffic citation, nor were any other charges brought against him. Mr. Carlsen alleges that Officer Harris stopped his car without reasonable suspicion and arrested him for driving under the influence of alcohol without probable cause, and that Officer Earl, who observed the arrest from a nearby police vehicle, is liable for failing to intervene.

Officers Harris and Low filed affidavits stating that they observed Mr. Carlsen make an improper right turn from an inside lane. As they followed his car, they stated they observed his brake lights go on twice even though the light was green. The officers pulled Mr. Carlsen over and, while checking his driver's license, detected an odor of cigarettes, which Officer Harris indicated on his arrest report prevented him from detecting any odor of alcohol. Both

officers stated Carlsen's eyes were red, that he looked sleepy, and became angry when asked if he had been drinking.

The parties dispute the results of the field sobriety test. Officers Harris and Low state that during the "alphabet/hand slap" portion of the test, Mr. Carlsen started before they finished instructing him on how to take the test, that Carlsen's slap became uncoordinated at "J" and he ultimately did not complete this portion of the test. The officers stated that, in four attempts, Mr. Carlsen was unable to track the movement of a pen without moving his head during the "horizontal gaze nystagmus test." Further, they alleged Mr. Carlsen started to perform the "walk and turn" test before instructions were completed, failed to touch his heel to his toe on all of the steps, and used his arms for balance, contrary to their instructions. Officer Earl alleges that he did not arrive on the scene until after the arrest was made.

Mr. Carlsen filed verified affidavits in response, disputing the officers' allegations with respect to the DUI arrest with detail and specificity. Mr. Carlsen described the movement of his vehicle in detail prior to the stop, denying that he made any improper right hand turn, and stating that an improper right turn was not the reason given by the officers for pulling him over. He stated that he may have braked to slow down on a steep decline, but was not driving erratically. He specifically denied starting the "alphabet/hand" slap test early, did not confuse

-10-

the letters during the test, and completed the test. He stated that he successfully completed the "horizontal gaze nystagmus" test to its completion and in accordance with Officer Harris's instructions. He also denied the officers' assertions that he started the "walk and turn" test early, that he failed to touch his heel to his toe on all of the steps, and asserted that he never lost his balance during the test.

"Probable cause . . . is present if 'at the moment the arrest was made . . . the facts and circumstances [within the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" Cottrell v. Kaysville City, 994 F.2d 730, 733-34 (10th Cir. 1993) (quoting Adams v. Williams, 407 U.S. 143, 148 (1972) and Beck, 379 U.S. at 91). Thus, the existence of probable cause depends on the reasonableness of Officer Harris' conduct under the particular circumstances presented.

Here, all of the factors articulated by the officers that led them to determine they had probable cause to arrest Mr. Carlsen are disputed by Carlsen, with the exception of their observation that he had appeared tired and smelled of cigarettes. We cannot conclude that these latter undisputed observations--a tired appearance at 1:30 in the morning and the smell of cigarettes--are sufficient, by

themselves, to provide Officer Harris with probable cause to arrest Mr. Carlsen for driving under the influence of alcohol. Thus, the disputed facts as to whether Mr. Carlsen was driving erratically and how he performed on the field sobriety test are genuine and material issues as to whether Officer Harris had probable cause to arrest Mr. Carlsen. See Cottrell, 994 F.2d at 734 (disputed issues of fact as to plaintiff's driving and as to results of field sobriety test preclude summary judgment on qualified immunity defense to § 1983 claim for wrongful arrest). These disputed issues, along with the dispute as to when Officer Earl arrived at the scene, also resolve whether or not Officer Earl failed to intervene in a wrongful arrest. Thus, it was error to grant summary judgment as to Officers Harris and Earl on this claim

D. Police Harassment. Mr. Carlsen next complains of three incidents of harassment by Officer Duron. On March 26, 1993, plaintiff was in court on a traffic citation. According to Mr. Carlsen, Officer Duron appeared in court but, at Mr. Carlsen's request, was excluded from the courtroom. Mr. Carlsen claims that when he left the courtroom, Officer Duron began yelling at him and threatened to strangle Mr. Carlsen again. Mr. Carlsen claims Officer Duron's actions interfered with his Sixth Amendment right to access to the court. A few weeks later, on April 14, 1993, Mr. Carlsen alleges he was driving normally when Officer Duron began tailgating him for such a prolonged period that Carlsen

was forced to pull into a post office and call a police dispatcher to report Officer Duron's behavior. A few weeks after that, on April 30, 1993, Mr. Carlsen was parked in his car in front of his work when Officer Duron drove by, pulled his police vehicle in next to Carlsen and began yelling obscenities at him and hindered his ability to walk from his car into work. Mr. Carlsen claims these actions constituted seizure without reasonable suspicion or probable cause. Officer Duron did not controvert any of Carlsen's harassment claims.

Although we cannot condone Officer Duron's alleged actions, claims of verbal harassment are generally insufficient to state a claim under § 1983. See King v. Olmsted County, 117 F.3d 1065, 1067 (8th Cir. 1997); Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) (same conclusion under Eighth Amendment). There is no evidence indicating Mr. Carlsen was not free to leave during each interaction; therefore, we cannot conclude that he was "seized" within the meaning of the Fourth Amendment. There is also no evidence that Officer Duron's verbal assault outside the courtroom in any way interfered with the court proceedings. Thus, summary judgment was properly granted as to these claims.

E. Use of False Testimony. Finally, Mr. Carlsen alleges that Logan City prosecutor Scott Wyatt knowingly used false testimony during two trials against him. Wyatt filed an affidavit stating that his only participation in these trials was

as a prosecutor, and he denied that he knowingly used false testimony, stating that he believed all the witnesses he called to have been honest and truthful.

We note that allegations of prosecutorial wrongdoing that arise from the prosecutor's role as an advocate during the preparation of, and performance of a trial are entitled to absolute prosecutorial immunity. See Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). Moreover, Mr. Carlsen made only conclusory allegations that witnesses gave inconsistent testimony, and failed to allege facts sufficient to demonstrate that Wyatt knowingly permitted perjured testimony in the two trials. Thus, the district court properly granted summary judgment in favor of Wyatt.

Accordingly, the judgment of the United States District Court for the District of Utah is AFFIRMED as to defendants Coy, Wyatt and Duron, and REVERSED and REMANDED for further proceedings consistent with this order and judgment as to defendants Earl and Harris.

Entered for the Court

Stephen H. Anderson
Circuit Judge