HENRY, J.,
concurring in part and dissenting in part:
The facts of this case as we must construe them on summary judgment are, to understate, disquieting. At 8:30 P.M. on April 16, 1996, seven camouflaged, unmarked, unidentified, and hooded SWAT team officers (from the La Plata County sheriffs office) swooped down upon a fami *1198 ly compound, weapons brandished, laser sights sweeping, and interrupted an eight year old’s basketball game, > forcing him and his older playmates to the ground, before continuing their advance. The seven then continued their raid, sweeping their laser sights across the back of a scared and fleeing four year-old child. Barging into the house, they found their quarry seated with his wife at his dining room table. Forcing them to lie down at gunpoint, the seven next raided the bedroom, removing the two women there to the front room, where the others were held.
The purpose of this armed intervention? To serve a search and arrest warrant for a misdemeanor charge. Incidentally, Sammy Heflin was later acquitted of these misdemeanor charges. What is wrong with this picture?
Well, for one thing, we don’t really know much about the plaintiff, Mr. Heflin. It does seem reasonable for the officers and their supervisors to have suspected him of assault and battery of some guests at a restaurant approximately two nights earlier. We do know Mr. Heflin was charged with a misdemeanor, but we are advised (and again, this is on summary judgment, where the record must be construed in favor of the non-moving party) that he had no criminal record, and, in fact, that he had no history of violence known to the police. We also know that the people who lived on Mr. Heflin’s property had no history of violence known to the police (with one exception, and that exception had already been arrested and removed from the premises). There was no evidence that the alleged assault in the restaurant involved any weapon.
But what kind of a supervisor would authorize such a raid? Our evidence further suggests that it was the kind of supervisor that wanted “to teach this piece of [excrement deleted] a lesson.” Aplt’s App. at 340-41 (depo. testim. of James Chever-ie, investigator for Sheriffs Department, referring to statement of Undersheriff Harrington). The La Plata County Sheriffs Department’s training session narrative instructed that the department
would use a dynamic entry only when it was deemed that serious bodily injury would likely occur to persons if a dynamic entry was not used. Dynamic entry would not be used to simply preserve evidence that might be destroyed if a slower form of entry was made.
Id. at 415-16 (narrative from April 29, 1992 La Plata County Sheriffs Office training session). A dynamic entry would be “made to counter an immediate threat.” Id. at 416. In addition, the evidence sought to be collected by the SWAT team (hats and cigarette packages, receipts and bills) was not easily destructible.
I join my colleagues in a well-crafted opinion, with one exception. My conscience, although not as shockable as it once was, is shocked by the planning that this kind of raid may very well have involved. Such planning would constitute force inspired by “unwise, excessive zeal amounting to an abuse of official power that shocks the conscience” that deserves “redress[ ] under the [Fourteenth Amendment].” Latta v. Keryte, 118 F.3d 693, 702 (10th Cir.1997) (internal quotation marks omitted).
Certainly, the plaintiffs’ case against Sheriff Schirard and Undersheriff Harrington would be stronger with factual allegations specifying their knowledge of the danger involved in such a “dynamic entry.” But, the ordering of such an entry by Sheriff Schirard and Undersheriff Harrington, contrary to department policy (or at least without showing compliance with department policy) — where seven armed guards converge on a compound where children are known to be playing, all in an effort to serve a warrant for a misdemean- *1199 or, coupled with Undersheriff Harrington s apparent animosity toward Mr. Heflin— gives rise to sufficient knowledge of danger that I would not cloak such reckless supervision with the protection of qualified immunity. I agree with the district court’s conclusion that Sheriff Sehirard’s decision to use the SWAT team, the knowledge of which is charged to Undersheriff Harrington, “provides the ‘affirmative link’ between his ‘personal participation’ in the alleged deprivation of Plaintiffs’ constitutional rights.” Aplt’s Br. ex. 2 (dist. ct. order filed Aug. 3,1999) at 19.
I am certainly not ready to grant judgment for the plaintiffs, but I would not decide at the summary judgment stage that this conduct was not violative of the Fourth Amendment; or if the Fourth Amendment does not apply, I would not decide on summary judgment that this conduct is not violative of the Fourteenth Amendment’s guarantee of substantive due process. Thus, I would affirm the district court’s decision denying qualified immunity to defendants Schirard, Harrington, and Davis on the claims arising from the decision to employ the SWAT team.