George RUCKER; Arnita Rucker, Individually and as Mother and Next Friend of George Anthany Rucker, Jr., Natia Watkins, and Fatima Rucker, Minors, Plaintiffs–Appellees,

v.

R.G. HAMPTON, Individually, Defendant–Appellant.

No. 01–7022.

United States Court of Appeals, Tenth Circuit.

Oct. 18, 2002.

Hack Welch, Hugo, OK, for Plaintiff–Appellee.

Wellon B. Poe, Jr., Oklahoma City, OK, for Defendant–Appellant.

Before SEYMOUR, PORFILIO, and O'BRIEN, Circuit Judges.

## ORDER AND JUDGMENT*

PORFILIO, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R.App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant-appellant R.G. Hampton appeals the district court's partial denial of summary judgment in plaintiffs-appellees' civil rights action brought pursuant to 42 U.S.C. § 1983. We reverse.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Hampton is a state trooper with the Oklahoma Highway Patrol. Plaintiffs alleged claims against him for false arrest, unlawful entry into their home, and excessive use of force in violation of the Fourth Amendment, arising out of an incident involving a moving traffic violation.[1] In civil suits for money damages, government officials are entitled to qualified immunity for discretionary acts unless their conduct violated "clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Anderson v. Creighton*, 483 U.S. 635, 648, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Trooper Hampton filed a motion for summary judgment, claiming he was entitled to qualified immunity because there was no false arrest, illegal entry or unconstitutional use of force and because he had not violated any clearly established constitutional law. The district court ruled that Trooper Hampton was entitled to qualified immunity on the false arrest and unlawful entry claims,[2] but found that there were material issues of fact precluding summary judgment on the excessive force claims.

We previously ordered briefing on whether the district court's order was immediately appealable. Because Trooper Hampton contends that, even accepting plaintiffs' version of the facts, he is entitled to qualified immunity, we conclude we have jurisdiction to hear this appeal. *De-Anzona v. City & County of Denver*, 222 F.3d 1229, 1233 (10th Cir.2000) ("If the defendant argues that [he] is entitled to qualified immunity under the plaintiff's version of the facts because the plaintiff has not demonstrated a violation of clearly established law, this Court may properly exercise jurisdiction over an interlocutory appeal").

Whether particular defendants are entitled to qualified immunity is a question to be resolved at the earliest possible stage of litigation. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). To determine if qualified immunity attaches, courts must first determine whether, "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer's conduct violated a constitutional right." *Id.* "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*

We set forth the facts in the light most favorable to plaintiffs, although Trooper Hampton disputes plaintiffs' version of the events in question. *See id.* On the night of January 17, 1998, Trooper Hampton observed a vehicle cross the center of the highway as it pulled out into the highway from a liquor store parking lot. He followed the vehicle for a few miles, at which point it pulled into a residential driveway. The driver exited the car, and Trooper Hampton recognized him as George Rucker, the plaintiff. Trooper Hampton told Rucker that he had observed him driving on the wrong side of the road and asked him for his license and registration.

---

1. Plaintiffs sued Trooper Hampton in both his individual and official capacity. They concede, however, that Trooper Hampton, in his official capacity, is entitled to Eleventh Amendment immunity from suit.

2. Plaintiffs contend in their answer brief that the district court erred in ruling Trooper Hampton was entitled to qualified immunity on any of their claims. However, because plaintiffs did not file a cross-appeal, we may not consider these claims. *See Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1227 (10th Cir.1997).

Rucker gave Trooper Hampton his license and registration. The officer then asked Rucker to sit in the back seat of the police vehicle while he conducted the traffic stop, but Rucker refused to do so.

Rucker claims that he then walked away from Trooper Hampton and into the residence.[3] Although he later learned the residence was Rucker's home, it is undisputed that Trooper Hampton did not know at the time into whose home Rucker had fled. The officer followed Rucker into the home. Rucker's wife and three children, aged thirteen, eleven and nine, were in the living room. According to Rucker, Trooper Hampton put him in a headlock and held Rucker's arm behind his back for twelve to fifteen minutes. Rucker denies that the officer ever told him he was under arrest and denies that he resisted any attempt to arrest him. He admits, however, that he resisted the holds Trooper Hampton was attempting, resisted the officer's attempts to take him outside, and refused to comply with any of Trooper Hampton's directives or requests, including the officer's request that he go back outside.

Trooper Hampton did not place Rucker under arrest and eventually released Rucker. Trooper Hampton testified that Rucker shouted to his wife, "[g]o get it, go get it, go get it," and that she went down a hallway. App. at 121. He testified that he did not know what Rucker meant or what the wife was going to do, but, fearing she was going to get a firearm, he drew his weapon and backed out of the house. Trooper Hampton denies that he ever aimed the weapon at anyone. Rucker's version, however, which we must accept for purposes of this appeal, is that the officer waved his gun in the direction of Rucker and his wife and children. Rucker

denies that he told his wife to get a gun and denies that he threatened the officer, but he did not dispute the officer's testimony that he said "go get it" to his wife. It is undisputed that Trooper Hampton displayed his weapon only very briefly and only as he was backing out of the house.

Rucker was prosecuted in state court for obstructing and resisting arrest and failing to keep to the right of a road of sufficient width in violation of Okla. Stat. Ann. § 11–301(a). Rucker was acquitted of the obstructing and resisting arrest charges, but found guilty of failing to keep to the right of the road. He and his family then filed this § 1983 action. In their excessive force claims, the plaintiffs contend Trooper Hampton used excessive force in wrestling with Rucker and placing him in a headlock and other holds and in drawing and pointing a weapon at them while retreating from the Rucker residence.

"Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment." *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). The reasonableness of the officer's actions must be assessed from the officer's vantage point at the scene of the alleged violation. *Saucier*, 533 U.S. at 205, 121 S.Ct. 2151; *Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.").

---

**3.** Trooper Hampton contends that Rucker was angry and confrontational in the driveway and ran into the residence when asked to

sit in the patrol car. Rucker denies that he was confrontational and claims he walked into the home, not ran.

The Supreme Court set out three criteria relevant to an excessive force inquiry: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham,* 490 U.S. at 396, 109 S.Ct. 1865. In addition, an assessment of the degree of force actually used is critical to the balancing test used to determine if the force was excessive. *See Tennessee v. Garner,* 471 U.S. 1, 8–9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). In this case, although the offense that initially triggered the investigatory stop was minor, Rucker then attempted to evade the investigation and possible arrest by leaving the scene, and Rucker and his family posed a perceived threat to Trooper Hampton. *See Graham,* 490 U.S. at 396, 109 S.Ct. 1865. We conclude that the allegations of the force used against Rucker and his family do not give rise to a claim under the Fourth Amendment.

Trooper Hampton contends that at the time of the incident, in January 1998, an excessive force claim failed as a matter of law to rise to the level of a constitutional violation if there was no physical injury. He is mistaken. The statements to which he refers in *Bella v. Chamberlain,* 24 F.3d 1251, 1257 (10th Cir.1994) and *Latta v. Keryte,* 118 F.3d 693, 702 (10th Cir.1997), were made in the context of excessive force claims under the substantive due process clauses of the Fifth and Fourteenth Amendments. This court held as early as 1990, however, that an excessive force claim under the Fourth Amendment may be made out where there has been no physical contact between the defendant-officers and the plaintiff-suspect. *See*

*Martin v. Bd. of County Comm'rs,* 909 F.2d 402, 406 (10th Cir.1990) ("[C]ourts have recognized excessive force claims where the force is expressed by means other than physical contact."

Nevertheless, a plaintiff must demonstrate that the amount of force used was "sufficiently egregious to be of constitutional dimensions." *Id.* at 407 (citing *Wise v. Bravo,* 666 F.2d 1328, 1335 (10th Cir. 1981)). A court must consider the extent of the injury inflicted by the use of force when evaluating a claim of unreasonable force. *Id.* Here, there is no evidence of bodily or physical injury.

The district court's conclusion that there are material facts in dispute which preclude summary judgment is in error because Trooper Hampton's conduct and his display of a weapon, even according to plaintiffs' version of the incident, was objectively reasonable. *See Graham,* 490 U.S. at 396, 109 S.Ct. 1865. Trooper Hampton was authorized to detain Rucker for questioning and investigation because he had a reasonable and articulable suspicion Rucker had committed a crime. *See Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Indeed, he had probable cause to arrest Rucker for failure to keep to the right of a road in violation of Okla. Stat. Ann. § 11–301(a), which, pursuant to Okla. Stat. Ann. § 17–101(B), is a misdemeanor crime punishable by fine of up to five hundred dollars or by imprisonment for up to ten days.[4] *See Atwater v. City of Lago Vista,* 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) (holding that the Constitution tolerates full custodial arrests for fine-only offenses).

---

4. Rucker denies that he failed to stay right of center and contends that Trooper Hampton's stop was a pretext. Rucker was found guilty of this charge, however. "[A] conviction rep-

resents a defense to a § 1983 action asserting arrest without probable cause." *Howard v. Dickerson,* 34 F.3d 978, 981 n. 2 (10th Cir. 1994).

The district court held that Trooper Hampton's entry into Mr. Rucker's home was not unlawful and granted summary judgment to defendant on that issue based on qualified immunity. Mr. Rucker did not file a cross-appeal of that issue. While it may have been reasonable for Rucker to decline Trooper Hampton's request that he sit in the patrol car during the investigative stop, it was not reasonable for him to leave the scene of the traffic stop. *Gassner v. City of Garland,* 864 F.2d 394, 400 (5th Cir.1989) ("A person who has been pulled over for committing a traffic violation, regardless of the circumstances surrounding the violation, simply does not have the right to leave the scene until the officer has completed an investigation that is reasonable under the circumstances."); *see* Okla. Stat. Ann. tit. 47, § 11–103 (misdemeanor offense to refuse to obey lawful order of police officer). Once Rucker left the scene of the stop without permission, went into an unknown residence, and then refused to exit the home or comply with any of Trooper Hampton's directives, it was reasonable for Trooper Hampton to use force by placing him in holds in an attempt to control Rucker's movements to protect the safety of the officer. *See United States v. Merkley,* 988 F.2d 1062, 1064 (10th Cir.1993).

A law enforcement agent, faced with the possibility of danger, has a right to take reasonable steps to protect himself and an obligation to ensure the safety of innocent bystanders, regardless of whether probable cause to arrest exists. This Circuit has long defended the ability of police officers to conduct safe investigatory stops.... [W]henever the police confront an individual reasonably believed to present a serious and imminent danger to the safety of the police and public, they are justified in taking reasonable steps to reduce the risk that anyone will get hurt.

There are no hard-and-fast rules regarding the reasonableness of force used during investigatory stops, and prior cases have eschewed establishing any bright-line standards for permissible conduct. It is clear, however, that, because safety may require the police to freeze temporarily a potentially dangerous situation, both the display of firearms and the use of handcuffs may be part of a reasonable [investigative] stop.

*Id.* (quotations and citations omitted).

In *Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179 (10th Cir.2001), *cert. denied,* — U.S. —, 122 S.Ct. 1914, 152 L.Ed.2d 824 (2002), this court held that it was clearly established in April 1996 that members of a SWAT team executing a misdemeanor arrest warrant who trained a weapon on a four-year-old child for two seconds and held an eight-year-old and a fourteen-year-old on the floor at gunpoint for ten minutes used excessive force. *Id.* at 1192–93, 1196–97. We wrote:

The display of weapons, and the pointing of firearms directly at persons inescapably involves the immediate threat of deadly force. Such a show of force should be predicated on at least a perceived risk of injury or danger to the officers or others, based upon what the officers know at that time. These are the very ingredients relevant to an excessive force inquiry. Where a person has submitted to the officers' show of force without resistance, and where an officer has no reasonable cause to believe that person poses a danger to the officer or to others, it may be excessive and unreasonable to continue to aim a loaded firearm directly at that person, in contrast to simply holding the weapon in a fashion ready for immediate use. Pointing a firearm directly at a child calls for even greater sensitivity to what

may be justified or what may be excessive under all the circumstances.

268 F.3d at 1192–93 (quotation and citation omitted).

There are significant differences between the facts of this case and those in *Holland.* The officers in *Holland* planned their seizure in advance and knew that children would be present when they conducted their SWAT deployment; they drew their weapons on the children outside of the suspect's residence, prior to the officers' entry into the suspect's home; there was no evidence that any of the children posed any threat to the officers; and the officers continued to hold the older children at gunpoint well past the time the officers needed to gain complete control of the situation.

In contrast, this case involved a traffic stop unexpectedly gone awry because the suspect evaded the officer's investigatory stop and fled into an unknown residence; the officer was alone; the suspect did not submit to the officer's display of force and refused to comply with any of his directions or requests; the officer perceived a threat to his safety from the bystanding family; and only displayed his weapon very briefly as he retreated from the home.

"[T]his case presents the classic situation in which a plaintiff's own actions in reaction to a legitimate law enforcement encounter result in escalating volatility and danger justifying the subsequent actions of the law enforcement officers involved." *Latta,* 118 F.3d at 698. The amount of force used by Trooper Hampton was reasonable under the circumstances. Because the facts alleged by plaintiffs are insufficient to state a constitutional violation, Trooper Hampton is entitled to qualified immunity. *See Saucier,* 533 U.S. at 201, 121 S.Ct. 2151.

The judgment of the United States District Court for the Eastern District of Oklahoma is REVERSED, and the case is REMANDED to the district court with directions to enter judgment in favor of defendant.